E. H. BEE et ux., Appellants,

v.

In re William Michael ROBBINS, Appellee.

No. 15292.

Court of Civil Appeals of Texas.

Dallas.

May 24, 1957.

Jackson C. Burroughs, Dallas, for appellants.

Burford, Ryburn, Hincks & Ford, Cooper Blankenship and Robert E. Burns, all of Dallas, for appellees.

DIXON, Chief Justice.

On August 24, 1956, appellees, Mr. and Mrs. Louis W. Edwards, filed their amended application asking that their grandson, William Michael Robbins, aged two years, be declared a dependent and neglected child. The child's father, Charles William Robbins, Jr., the only surviving parent, having been duly cited, filed his answer contesting the application. Thereafter the child's paternal great-aunt, Mrs. Lillie Mae Bee, and her present husband Edmund H. Bee, intervened, also contesting the application, and pleading in the alternative that if said child should be declared dependent and neglected, that they be awarded his care and custody. Both the maternal grandparents, Mr. and Mrs. Edwards, and the paternal great-aunt and her husband, stated that it was their desire and intention to adopt the child.

After a trial before a jury, the court entered its order dated October 31, 1956, declaring the child to be dependent and neglected and continued its care and custody in appellees, the maternal grandparents, Mr. and Mrs. Edwards. The father, Charles William Robbins, Jr., has not appealed. The paternal great-aunt, Mrs. Bee, and her husband have appealed.

### Facts

The evidence in this case tells a sad and tragic story. When the father, Charles William Robbins, Jr., was twelve years old he and his two younger brothers were abandoned by their parents and were declared to be neglected and dependent children. Their care and custody was then taken over by their three aunts, one of whom was the appellee, Mrs. Lillie Mae Bee. Charles William Robbins, Jr., was a problem child. The record shows that as a juvenile he was referred to the juvenile authorities of Dallas County twelve times in regard to various of his activities including malicious mischief, burglary of guns and shells, run-away, auto theft, gang fight, and again burglary and theft. In the latter part of 1951 he was sent to the State Training School for Boys at Gatesville, Texas. In 1952 at the age of seventeen years, he escaped from the Training School,

and while an escapee in Dallas he ran away with a fifteen-year-old girl, Janet Carol Edwards. The young couple went to Rockwall, Texas, where on May 10, 1952, they were married. On July 4, 1954, at a party which his wife did not attend, Charles William Robbins, Jr., killed another youth. Two days later, on July 6, 1954, his wife, Janet Edwards, gave birth to the child who is the subject of this controversy. On December 10, 1954, Charles William Robbins, Jr., the father, was convicted of murder with malice. On October 31, 1955, he was sentenced to the penitentiary for a term of fifty years. He is now in the penitentiary serving said term.

On August 16, 1955, the mother, Janet Edwards Robbins, was granted a divorce from the child's father. Some time before the divorce was granted she and the child moved into the home of her parents, Mr. and Mrs. Edwards, appellees. She had obtained employment and while she was away during the day Mrs. Edwards took care of the baby. On July 31, 1956, Janet Edwards Robbins committed suicide in the garage of her parents by shooting herself with a deer rifle. The circumstances leading to her suicide remain a mystery. Earlier the same evening she appeared in good spirits. When her parents came home about 11 o'clock from a social engagement they found her dead. The baby has continued under the care and custody of his grandparents, Mr. and Mrs. Edwards, appellees, since the death of the young mother.

In his written answer filed in this suit the child's father pled as follows: "That the said Charles W. Robbins, Jr., is the natural father of the minor child, William Michael Robbins, who is now two years of age; *that the said Charles W. Robbins, Jr., is not in a position and cannot physically support said child, and will not be able to do so for an indefinite period of time.* (II) The said Charles W. Robbins, Jr., would respectfully show to the court that as the natural father of the aforesaid child, he hereby assigns all of his paternal rights in this matter to Mr. and Mrs. E. H. Bee * * *." (Emphasis ours.)

## Opinion

Appellees present their point No. 1 which amounts to a motion, wherein they ask that the appeal be dismissed because appellants have not been injured by the judgment of the trial court. As we have already stated, the child's father, Charles William Robbins, Jr., has not appealed from the judgment of the trial court. The great aunt, Mrs. Lillie Mae Bee, and her husband have appealed. The motion in effect challenges their right to appeal, asserting that only the father, who is the surviving parent and the natural guardian of the child, may complain of the error, if any, of the trial court in declaring the baby to be a dependent child.

Article 2331, Vernon's Ann.Civ.St., provides that "Any person who is a resident of the county, having knowledge of a child in his county who appears to be a 'dependent' or 'neglected' child may file with the district clerk of his county a written petition, setting forth the facts constituting the child 'dependent' or 'neglected' * *." Article 2334, V.A.C.S., provides that "Any person interested in any case under this title may appear therein and may be represented by counsel, and may demand a jury as in other cases * * *."

We think that under the above statutory provisions appellants would have the right to appear in this dependency proceeding as interested parties, either as proponents or opponents of the application to have the child declared dependent. And since they have such right, it follows that they would have the right to appeal from an adverse decision. We overrule appellees' motion to dismiss the appeal.

The material part of appellants' point No. 1 is as follows: "Since the

natural father of the minor had made financial arrangements with the appellants, Mr. and Mrs. Bee, who, the jury found were fit and proper persons to have the custody of the child, the lower court erred in entering a judgment, declaring that the child was a 'dependent child'."

The only arrangements made by the child's father so far as we can glean from the record are the attempted assignment of his parental rights by the father, hereinbefore quoted from his answer, and the testimony of appellants that they are willing and able to support the child, and desire to adopt him. The attempted assignment is without any legal force and effect. Legate v. Legate, 87 Tex. 248, 28 S.W. 281; Hooks v. Bridgewater, 111 Tex. 122, 229 S.W. 1114, 15 A.L.R. 216; 31 Tex.Jur. 1289.

The great-aunt, Mrs. Bee, and her husband, though they are to be commended for their willingness to care for and support the child, are not under any legal obligation to do so. Even grandparents are not under any such legal obligation. Pope v. State, 123 Tex.Cr.R. 576, 59 S.W.2d 390; 67 C.J.S. Parent and Child § 19, p. 705. Though the great-aunt might voluntarily place herself in loco parentis with reference to the child, she would be free to terminate the arrangement at will. McDonald v. Texas Emp. Ins. Ass'n, Tex.Civ.App., 267 S.W. 1074, at page 1076. Therefore the so-called arrangements made by the father in this case are not as a matter of law sufficient to establish a relationship under which the great-aunt and her husband would be legally bound to furnish continued care and support to the baby. He would be dependent on their gratuitous bounty and kindness, terminable at will, consequently he would be a dependent child under our statute.

As to the father, it is true that cases may be cited wherein it is held that a parent will not be deprived of his parental authority because he is unable temporarily to care for and support a child due to necessitous circumstances or misfortunes beyond his control when such circumstances or misfortunes are not brought about by his own misconduct. But in our opinion such cases are not in point under the circumstances which confront us here. Appellants' point No. 1 is overruled.

At the conclusion of the evidence appellants requested the court to submit to the jury a special issue inquiring whether the child was a dependent child. The court refused to submit the issue. In their point No. 2 appellants say that such refusal was error.

The question of the dependency of a child is a fact question, which in jury cases must be submitted to the jury if the evidence is controverted, or is sufficiently contradictory to raise a doubt, or if the only testimony comes from an interested witness. The finding of the jury is binding on the court unless it is contrary to the overwhelming weight of the evidence. Mitchell v. Davis, Tex.Civ. App., 205 S.W.2d 812, 12 A.L.R.2d 1042. But where the essential facts are undisputed and leave no room for doubt, the rule, as it is in all civil jury cases, is that the issue should not be submitted to the jury. 41-B Tex.Jur. 489.

The grounds for declaring this child dependent come within that part of Art. 2330, V.A.C.S., as follows: "The term 'dependent child' or 'neglected child' includes any child under sixteen years of age * * * who has not proper parental care or guardianship * * *."

In this case the undisputed fact is that the child is without proper parental care or guardianship. Though one may feel confident that the great-aunt and the maternal grandparents would take care of the child, neither the great-aunt nor the grandparents, as we have already pointed out, are under any legal obligation to do so, hence the child is not entitled

as a matter of legal right to look to them for care and sustenance. We believe that the Supreme Court of Oklahoma correctly states the law as follows: "The promises and plans of the father as to future care did not change or alter the status of the child at the time the cause was tried and the judgment rendered. The mere fact that he was enjoying proper care in the Christian home of Mr. and Mrs. Roberts and, therefore, was not homeless, destitute and abandoned in fact, does not mean that this child was receiving proper parental care and guardianship. In re Reed, 189 Okl. 389, 117 P.2d 503." In re Davis, 206 Okl. 405, 244 P.2d 555, at pages 558, 559.

Though the child in the case now before us is fortunate enough to have relatives two generations removed who are interested in his care and custody, there is no doubt that, within the meaning of the statute, he does not have "proper parental care or guardianship." Appellants' point No. 2 is overruled.

In their point No. 3 appellants complain because the court refused to admit into evidence certain letters written by the young mother to the child's father after he was committed to the penitentiary. In one letter she expressed her desire to move away from her mother and father. In the other letter she stated that she still loved the child's father and that "I know we will be together again, and you will have the opportunity to raise Mike as we had planned to."

Appellants contend that these letters were very material in that one of them indicates that the mother felt the child would be better away from the grandparents; and the other contains an expression from the deceased mother as to her desire as to who might have the child, which expression was tantamount to the appointment of a guardian of the person under § 117 of our Probate Code, V.A.T.S.

We see no material error in the action of the court in refusing to admit the two letters in evidence. For one thing, the letters are hearsay. 17 Tex.Jur. 526. For another thing, the fact that the young mother desired to set up her own separate domestic establishment for herself and her child, rather than live as a guest in the home of her parents, is no disparagement of her parents in regard to their fitness to have care and custody of the baby after the mother's death. And plainly the letters do not come within the provisions of § 117 of the Probate Code, for (1) at the time the letters were written both the baby's parents were living, hence the letters were not declarations by a *surviving* parent; and (2) the letters do not undertake to appoint anyone as guardian. Appellants' point No. 3 is overruled.

In their fourth and last point appellants complain because the trial court refused to submit a requested special issue which inquired whether the child should be placed temporarily with persons unknown either to the grandparents or the great-aunt.

The jury found that both the grandparents and the great-aunt and her husband were fit persons to have the care and custody of the child. This finding by the jury was only advisory, for in matters of child custody the jury verdict is not binding on the court. The court may even refuse to permit a jury trial. Erwin v. Williams, Tex.Civ.App., 253 S.W.2d 303, at page 305, and cases there cited. The requested issue, if submitted, would not have elicited a jury finding which would have bound the court. Under our law it is the responsibility of the judge to determine questions of custody in the case of a dependent child, and his decision on the question of custody, unless contrary to the overwhelming weight of the evidence, will not be reversed on appeal. Under the circumstances we see no harm to appellants

in the court's refusal to submit the requested issue.

Furthermore, we think the requested issue merely seeks to obtain the opinion of the jury, rather than to determine a disputed fact issue. In view of the jury finding that both the great-aunt and the grandparents were fit persons to have the care and custody of the child, the trial judge, on whom our law puts the responsibility anyway, ought not to be required to ask the jury's further advice as to what he ought to do about the persons asking custody. Certainly we do not believe that the court's refusal to submit the requested issue was reversible error. Appellants' point No. 4 is overruled.

The judgment of the trial court is affirmed.