Betty HENDRICKS et vir, Appellants,

v.

Alton B. CURRY et ux., Appellees.

Nos. 16610, 16611.

Court of Civil Appeals of Texas.

Fort Worth.

March 19, 1965.

Rehearing Denied April 16, 1965.

Coleman & Whitten, and Royce Whitten, Denton, for appellants.

G. H. Kelsoe, Jr., Dallas, for appellees.

MASSEY, Chief Justice.

Presented are two separate appeals from judgments of the District Court of Denton County, Texas. One judgment constituted an adjudication that a certain infant was a "dependent child"; the other constituted an adjudication decreeing an adoption of the same infant by "adoptive parents". Each adjudication was against the contentions and over the protests of the natural mother of the child, coupled with a denial to her of that custody for which she prayed. Both were made pursuant to a combined trial before the court without a jury. On appeal we have two separate transcripts, but a single statement of facts.

We affirm the judgments of the trial court.

Aside and apart from any question of the propriety of the trial court's adjudication of dependency, the right of custody of the child (as between the parties) was left in the prospective adoptive parents who had theretofore received and for sometime maintained the child. They had originally acquired custody through the initiative and by the consent of the natural mother. In such an instance, when the natural mother invokes the jurisdiction of the court, she invokes its equitable discretion as well. The court is called on to decide the question of custody under the test: "Would the best interest of the child be served by granting the relief prayed for?" Only in the event of an abuse of discretion would the decision of the court be reversible on appeal. See this court's opinion in Herre v. Morris, 251 S.W.2d 260 (Fort Worth Civ.App., 1952, no writ hist.), and the authorities cited therein. See also Hendrick v. Voss, 334 S.W.2d 308 (Dallas Civ.App., 1960, no writ hist.), and authorities cited at end of page 314 and beginning of page 315. In the instant case there was no abuse of discretion and the court's refusal of that change of custody sought by the natural mother would not be disturbed.

The fact that the natural mother may not regain custody would not foreclose her right "as an interested person" to oppose any adjudication that the child was dependent or neglected or to oppose a decree of adoption, particularly if her opposition to the dependency proceedings should prevail. If she prevailed in these, she could "elect" whether or not she would defeat any proposed adoption by granting or withholding her consent.

Appellants, above styled, were the natural mother of the child in question and the husband whom she married after she had initiated proceedings directed toward obtaining custody and preventing adoption. In the opinion we will ordinarily make reference to the interests of these parties in a use of the term "natural mother". Appellees were for a time "prospective" adoptive parents, later the adoptive parents.

Before the time for the infant to be born the natural mother, then an unmarried minor child herself, initiated (or consented to the initiation of) arrangements whereby her baby, when born, would be taken by prospective adoptive parents. The whole of the evidence supported the conclusion of the trial court that after the baby was born the natural mother did freely consent that it be taken and delivered to other persons. At her specific request the identities of such persons were not to be revealed to her. All arrangements were made through an intermediary by the name of Lawrence. Although not entirely clear from the record it is indicated that Lawrence was acting as the agent for both the natural mother and for the adoptive parents, with the con-

sent of all. In any event the natural mother left him free to deliver the newborn baby to individuals of his choosing, without direction, restriction or condition made by her. At the time, the natural mother executed, in writing, her consent for the adoption of the child. She was made aware of the fact that the law required a six months' waiting period in adoption cases. In other words she knew that the baby would not be "adopted" for at least six months.

Circumstances of the instant case were materially different from those in Martin v. Cameron County Child Welfare Unit, 326 S.W.2d 31 (San Antonio Civ.App., 1959, writ ref., n. r. e. at 160 Tex. 274, 329 S.W.2d 83). There the natural mother,— apparently ready, willing and able to finance her confinement and incidental expenses,— was "talked out" of assuming them and "talked into" yielding up her baby. Promptly after the birth of the baby the natural mother began to do all in her power to gain custody. Here the natural mother was not ready, willing and able to assume financial responsibility for any kind of care. She was not "talked into" yielding up her baby, but did so voluntarily. She took no steps to gain custody of her baby for some five months, during which she evidenced no willingness to discharge any parental responsibility—or to personally afford or provide proper parental care of guardianship for the child.

The entire proceedings of the instant case were those usual in instances where individuals attempt these adoptive transactions, i. e., having the prenatal care and hospitalization and delivery services arranged, etc., without participation by any agency licensed by the state. Hazards thereof are well known, but nevertheless continue to be risked. In this instance there were no papers signed by the natural mother in connection with any anticipated judicial proceedings relative to having the child declared "dependent". There had been no intention to have an adjudication to this effect.

Ordinarily, procedure thus risked results in an untroubled and uncomplicated adoption. The instant case was an exception. After the child had been in the care and custody of the "prospective adoptive parents" for a period of five months the natural mother wrote a letter to Mr. Lawrence in which she expressed the desire to retract her consent theretofore given for the adoption of the child. Mr. Lawrence prevailed upon her to delay action. He was unable to persuade her to abide by her original agreement. She determined to do all things necessary to regain the child. She learned the identity of the "prospective adoptive parents" and initiated *habeas corpus* proceedings in Dallas County.

Although inconclusive and immaterial to the disposition of the case, it would appear that such action on the part of the natural mother threw the prospective adoptive parents into a state of near panic. Although they resided in a fine home in Dallas County, they moved out of it and established residence in an apartment in Denton County. With somewhat unseemly haste they caused to be filed in the District Court of the latter County the written petition required to be filed in proceedings anticipated to culminate in a decree of the court declaring a minor to be a "dependent child". Without notice to the natural mother (who was trying to prosecute the *habeas corpus* proceedings in Dallas County) a decree of the court was obtained which adjudicated the infant to be a "dependent child".

 Constitution of Texas, Art. V, "Judicial Department", § 8, Vernon's Ann. St., "Jurisdiction of District Court", provides that the District Court shall have "original jurisdiction and general control over * * * minors under such regulations as may be prescribed by law." This means that as and when necessary the court has the authority to exercise custodial control, etc., as might be indicated for the protection of the interest of the people of the state, in particular the minor directly af-

fected. The qualifying phrase, "under such regulations as may be prescribed by law" has not the effect to delay or defer the authority so conferred upon the District Court, but rather constituted a notice of the conferring of authority upon the Legislature to regulate and place limitations upon the rather broad authority conferred upon the court. Of course, it is plain to be observed that the Legislature became endowed with the authority to enact laws, both mandatory and directory, bearing upon the subject embraced by the Constitutional provision.

■ Such were those under Title 43, Vernon's Ann.Tex.Civ.St., Art. 2330, "Dependent or neglected child" et seq., relating to which minors fall within the definition, how they should be dealt with, and in effect to so regulate judicial proceedings affecting such minors as to place a limitation upon the authority of the District Court. These statutes are not conclusive, nor exclusive, of the ordinary powers of the courts to determine the best interests of the child. They are in effect in aid of those powers, and cumulative of other remedies. Speer's Marital Rights in Texas, 4th Ed., § 118, "(Custody and control)—Dependent or neglected children." Thereunder it is prescribed that a child under sixteen years of age, coming within certain qualifications and found in certain circumstances, *should be* adjudged a "dependent child". An infant may not be adjudicated a "dependent child" in any manner other than as provided by these statutes.

■ Adjudication of such "dependency" was prescribed to be in writing. The court was charged with the duty to turn the child so adjudicated over to individuals or agencies as a "dependent child" for custodial purposes. Duties were prescribed to be devolved upon the court making the adjudication. It is clear from the statutes that preexisting custodial rights of the parents or guardian of such a child are nullified by such an adjudication, and one effect thereof is that the child becomes a ward of the court, which is charged with the primary responsibility of custody. Although the court is empowered to confer upon another, or others, custodial rights over such a child the court cannot divest itself of the primary responsibility therefor. He to whom custodial rights might be conferred by the court is exposed to loss thereof by order of the court. Indeed, it is to be noted that the court may confer custodial rights over such a child upon the parents themselves, who may have been the persons responsible for the child's "dependency". From these provisions it is evident that the proceedings prescribed by the statutes were to afford, in the public interest, additional protection to dependent and neglected children within this state by divesting all persons with any presumptive priority of custodial rights and making the court itself the custodian. So long as there is no adjudication which is outside of, and other than or in addition to, that contemplated by Art. 2330, et seq., the child continues to be a "dependent" child, and the primary right and responsibility for the care and custody belongs exclusively to the court.

■ It is not intended to say that the "dependency" proceedings might forever settle the status of the child as a "dependent child", for it is noted in Art. 2337, "Custody of child", that a child who has so been adjudicated may lawfully be restored to the parents or guardian upon proper proceedings. Otherwise stated, the "dependency" proceedings may by order of the court be suspended or even vacated, set aside and held for naught, where it is made to appear that the best interests of the child so require. Obviously, in connection with such a proceeding it could be that the status of the child would be restored to that existent prior to the institution of any "dependency" proceeding. In such a proceeding there could be no investiture of custody (primary right of legal custody) in any new person. During the pendency of the "dependency" of a child, custody of the child might be in a "new" person, but such custody could not be primary. It would be

dependent upon and subsidiary to the primary custodial right existent in the court.

There is, however, a means provided by law under which the primary right of legal custody of such a child could become vested in a "new" person. Under V.A.T.S., Title 3, "Adoption", Art. 46a, "Proceedings for adoption, hearing and rights of adopted child", § 6, "Consent of parents and child; exceptions", it is provided that a minor child may be adopted without the consent of the natural parents, etc., in instances where their "parental rights have been terminated by order of the Juvenile Court or other court of competent jurisdiction." In such an instance it would be only the consent of the court which would be necessary to adopt such a child, and by provision of § 9, "Status of adopted child" (Art. 46a) the adoptive parents would assume relationship to the child as original natural parents, and the child's status would become the same as that of a child naturally born to said parents,—all pursuant to the decree of adoption.

■ As heretofore noted, entry of a proper decree that a child was "dependent" automatically (and pursuant to statute, Art. 2337) terminates the parental custodial rights theretofore appertaining to said child. In the event of subsequent adoption (coupled with the decree of adoption contemplated in said cases under Art. 46a), there is a resultant termination of the "dependency" proceedings under Art. 2330 et seq. The "dependency" proceedings are not vacated nor suspended; they are ended and terminated by operation of the law as embodied in Art. 46a.

■ As applied to the instant situation and with reference to Art. 2330, we are obliged to ascertain the propriety of the trial court's adjudication that the child in question was a "dependent" child. We must consider the facts and circumstances of the situation and test them as to whether they present a case wherein the child might properly be said to have been "dependent

or neglected" at the material time. "What is the material time for purpose of consideration in the determination of whether (under Art. 2330, et seq.) the child in question was (1) dependent upon the public for support, (2) destitute, (3) homeless, (4) abandoned, or (5) had not proper parental care or guardianship?"

■ In any case there seems to be little question but that in the tests to be made of Nos. (1) to (5), inclusive, above outlined, we are obliged to view the condition of the child—in connection with its circumstances—from the standpoint of the natural mother who is contesting the propriety of any adjudication that her child was "dependent or neglected". In other words the question would be: "From the standpoint of the natural mother had she allowed the child to become destitute, homeless, abandoned, dependent upon another or others for support; or—had she failed to afford or provide proper parental care or guardianship for the child?" Spangler v. Breashears, 359 S.W.2d 206 (Texarkana Civ.App., 1962, writ ref., n. r. e.).

We have no doubt but that fact questions were raised in relation to the foregoing if we consider the time between that of the birth of the child in question, and the time —some five months later—when the natural mother first published (in so far as the adoptive parents were concerned) her desire to undo a situation which she had voluntarily initiated, or to which she had consented. Of course, her primary objective was to gain custody of the child. In that observation it is possible that we err; and it may be that her primary objective was to prevent its being adjudicated "dependent", or to prevent its adoption in any event.

■ Viewed from the standpoint of the natural mother her voluntary relinquishment of the infant to persons unknown (under an agreement which contemplated the permanent parting with the child by the mother as custodian in respect to con-

trol, and as one responsible for the expenses incident to the care and nurture), with no right retained by her—not even to enforce care, nurture, etc., expected to be furnished by the new custodian—entitled the trial court to factually conclude that she had abandoned it; had rendered it dependent upon public or private charity for its food, clothing, and shelter; and dependent upon another, or others, for parental care or guardianship, during the first five months of its life.

The term "abandonment", as used in the adoption statutes, has been held to mean "an absolute relinquishment of the custody and control of the child and the willful purpose and intention to relinquish the benefit of the rights to which the parent is entitled under the law." Platt v. Moore, 183 S.W.2d 682 (Amarillo Civ. App., 1944, writ ref., w. o. m.); 1 Tex.Jur. 2d 707, "Adoption", § 25, " * * * Abandonment". We believe it should have the same meaning under the dependency statutes.

Although contrary to the decision in Pettit v. Engelking, 260 S.W.2d 613 (San Antonio Civ.App., 1953, writ ref., n. r. e.); Hull v. Hull, 332 S.W.2d 758 (San Antonio Civ.App., 1960, no writ hist.); and De Fur v. Speers, 369 S.W.2d 850 (Dallas Civ.App., 1963, no writ hist.), we nevertheless hold that where the acts and/or omissions of the natural parent amounted to proximate cause(s) of the conditions and circumstances surrounding the child, or in which the child was found,—when and on account of which said child was given help, aid and succor, or was sheltered and protected and afforded care and custody by any person or agency or legal entity—such is legal evidence warranting and justifying the court's order and decree *at a later time* adjudicating the status of such infant to be that of a "dependent" child.

Furthermore, we deem it immaterial whether the individual filing or inspiring the filing of the petition (setting forth facts constituting the child "dependent" or "neglected" under Art. 2331) might have done so with the hope of later adopting the child. Proceedings under Art. 2330 et seq. are to adjudicate the "status" of a child.

Dependency actions are frequently based upon unjustified and unreasonable mistreatment, either direct or brutal or passive (as in the case of neglect where the child is left unattended for long hours). In either event the mistreatment will in nearly every instance no longer be occurring at the time the petition setting forth facts constituting the child "dependent" or "neglected" is filed. By this time a public agency will have assumed custody of the child. The very acts or omissions provable upon the hearing will necessarily relate to a time antecedent to the time the "dependency" petition was filed. That being true the question is posed: "Over how much antecedent time may evidence be receivable in the determination of whether conditions (presently) exist justifying a decree of dependency?" The answer must lie in the discretion of the trial court. A test of the efficiency of the evidence must include an examination into the matter of whether there has been an abuse of such discretion.

We believe that where the evidence received relates to such acts and/or omissions on the part of one who objects to the adjudication of dependency,—which acts and/or omissions amounted to proximate cause(s) of the very conditions which rendered the child "dependent" or "neglected",—the trial court should be entitled to consider such evidence. It is our opinion and holding that such evidence has sufficient probative force and effect to support a decree adjudicating the child a "dependent child" under the statute.

On the trial below, from which the appeal(s) were taken by the natural mother, the trial court ruled that she was obliged to carry the burden of proof on the hearing in the matter of "dependency". She did proceed to introduce evidence in discharge

of such burden—under protest. The proceedings were before the court. The record reflects that such evidence as was available to each of the parties was introduced. In other words a full hearing was had. In the court's findings of fact and conclusions of law it was shown affirmatively that the decision would have been the same regardless of which side was obliged to discharge the burden of proof.

We agree that the burden of proof in the course of the proceedings below should not have been placed upon the natural mother. At least such would be true on the matter of "dependency". However, in view of the fact that proceedings involving a full hearing were before the court without a jury—and in view of the facts reflected in the court's findings of fact and conclusions of law, no reversible error resulted. Texas Real Estate Commission v. Sandefur, 279 S.W.2d 954 (Fort Worth Civ. App., 1955, no writ hist.).

When the initial hearing was held, pursuant to which the child in question was adjudged "dependent", without notice to the natural mother, the hearing was upon "dependency proceedings" initiated in Denton County but heard (on the same day) in Cooke County. (Cooke and Denton Counties together comprise the 16th Judicial District Court. The regular judge of that District made the adjudication at the initial hearing.) It is contended by the natural mother that the court was without jurisdiction to make the adjudication,— wherefore it was void and of no effect.

We overrule the contention. It is frequently necessary and absolutely essential to an infant's welfare that a decree be promptly entered adjudicating it to be a "dependent child". Sometimes the very life of the infant would depend upon such an order. That the judge is holding court in a county other than that in which de-

pendency proceedings are instituted, but within his district, would not render the court helpless to act. The judge, as the court, has authority and jurisdiction to act. And if he signs a decree of dependency, though it be without notice to the parents who consider themselves aggrieved, it is valid—subject only to the right of the parents to a full hearing in a subsequent proceeding on the issue — as to whether the child was in fact a dependent or neglected child. Broome v. Edna Gladney Home, 295 S.W.2d 266 (Fort Worth Civ.App., 1956, no writ hist.). In the instant case the complainant, the natural mother, did have "a full hearing in a subsequent proceeding". It is from the judgment(s) in said proceeding that the appeal(s) have been taken to this court. Any prejudice which might have theretofore existed was cured.

From what has been said in our discussion to this point all of the material points of error are resolved against the contentions of the natural mother. We have refrained from discussing other points which in our view do not have any necessary relation to controlling issues of fact. They had been severally considered and are severally overruled. As applied to the issues of fact upon which findings were made, and as applied to the essential conclusions upon the law on the part of the court, we believe that there was ample evidence to support the findings of fact so made. The conclusions of law were correct. In other words the adjudication that the child was a "dependent child" was supported by adequate evidence having probative force and effect; and the fact findings upon which the court made legal conclusions perforce which the adjudication was made were not against the great weight and preponderance of the evidence. The same thing would properly be said with reference to the court's decree of adoption.

Judgment(s) are affirmed.