Betty **HENDRICKS** et vir, Petitioners,

v.

Alton B. **CURRY** et ux., Respondents.

No. A–10794.

Supreme Court of Texas.

March 30, 1966.

Rehearing Denied April 27, 1966.

Coleman & Whitten, Denton, for petitioners.

G. H. Kelsoe, Jr., Dallas, for respondents.

SMITH, Justice.

This is an appeal from two judgments of the trial court, both affirmed by the Court of Civil Appeals. 389 S.W.2d 181. One of the judgments was entered by the trial court in Cause No. 26,909, and the other was entered in Cause No. 26,910. Appeals from the two judgments were prosecuted on separate transcripts, but they were briefed together in the Court of Civil Appeals and were consolidated by that Court into one cause. They have been briefed and presented as one cause in this Court.

The record shows that in Cause No. 26,-909 the trial court, on December 2, 1963, adjudged the minor daughter of Betty Hendricks, then Betty Shellenberger, to be a dependent and neglected child, and awarded custody of the child to respondents herein, Alton B. Curry and wife. Thereafter, on July 17, 1964, the trial court denied a motion to set the judgment aside. In Cause No. 26,910 the trial court by judgment dated July 17, 1964, decreed an adoption of the child by the Currys. We sever Cause No. 26,910 from Cause No. 26,-909; and as to it, we reverse the judgments of the Court of Civil Appeals and trial court and here render judgment denying the Curry's petition for adoption. We reverse the judgments of the courts below in Cause No. 26,909 and remand the cause to the trial court for a new trial of the issue of custody. The facts leading to the two judgments follow:

On June 3, 1963, Betty Shellenberger, an unwed mother, gave her consent in writing for the adoption of her infant daughter. On the same day the child was placed in the care and custody of the respondents, Mr. and Mrs. Alton B. Curry, for the purpose of adoption. The evidence shows that the mother gave her written consent to adoption of the child upon assurance of an attorney, acting for the Currys, that the people he represented were "wonderful, high-class people" and would "give the child a real home." The proposed adoptive parents were not identified to Betty by the attorney. She later discovered their identity. On November 18, 1963, the Currys filed adoption proceedings in Dallas County, Texas, the birthplace of the child. On December 2, 1963, the mother filed a withdrawal of her consent to adoption of the child and filed a petition for a writ of habeas corpus by which she sought custody and control of the child. On the same day, the Currys, who had become residents of Denton County on November 30th, dismissed the adoption proceeding pending in Dallas County; and also on the same day they filed the two causes, above noted, in the District Court of the 16th Judicial District of Texas, a district comprised of Denton and Cooke Counties. The suits were filed in Denton County.

In Cause No. 26,909, the Currys sought a judgment under Article 2330, Vernon's Texas Civil Statutes, adjudging the child to be a dependent and neglected child, and awarding custody of the child to them. The only grounds alleged for adjudging the child to be dependent and neglected were that until petitioners took her the child was dependent upon the public for support, that she was destitute, homeless and abandoned, and that she did not have proper parental care or guardianship. On the day the proceeding was filed, the Court, without notice to the mother and after an ex parte hearing held in Cooke County, entered a judgment declaring the child to be a dependent and neglected child, terminated all parental rights of the mother, and awarded custody of the child to the Currys.

In Cause No. 26,910, the Currys petitioned for leave to adopt the child, alleging that the natural mother had consented to her adoption. To their petition they attached the consent to adoption which had been executed by the mother on June 3, 1963. On the day the petition was filed, the court appointed an investigator and ordered that a report be made within thirty days. The court, on the same day, set the adoption petition for hearing on January 13, 1964. On December 17, 1963, the Currys filed an amendment to their adoption petition in which they set up the judgment of dependency and neglect as an additional basis for granting the petition.

On January 2, 1964, Betty Shellenberger filed a petition in Cause No. 26,909 in which she sought to have the judgment of December 2, 1963, declared void and set aside, and to have the care, custody and control of the child returned to her. In an amended petition, Betty (Shellenberger) Hendricks and her husband challenged the jurisdiction of the court to hear the cause and enter the judgment of December 2, 1963, in Cooke County, since the cause was pending in Denton County, and, in addition, sought a full hearing on the issue of dependency and neglect. On January 2,

1964, Betty Shellenberger also filed in Cause No. 26,910 a petition in intervention, in which she was later joined by her husband, and in which they prayed that the Curry's petition to adopt the child be denied. Both causes were set for trial on May 4, 1964, and, after a joint and full hearing, the judgments described in the beginning of this opinion were rendered and entered on July 17, 1964. At the request of the Hendrickses, the trial court filed extensive findings of fact and conclusions of law in support of its judgments.

The judgments adjudicated three separate and distinct issues: (1) The status of the child as a dependent and neglected child under Article 2330; (2) adoption of the child by the Currys; and (3) the right to custody and possession of the child. These issues will be discussed in the order in which they are listed. But we must first dispose of the jurisdictional question.

■ We hold that the trial court had jurisdiction to hear the evidence and enter the judgment of December 2, 1963, in Cause No. 26,909 in Cooke County. Denton and Cooke counties are in the 16th Judicial District of Texas. The Currys and the child were resident citizens of Denton County. Under Section 2, Article 1919, Vernon's Texas Civil Statutes, District Courts of judicial districts containing more than one county may, with certain exceptions, hear and determine in any county in the district any nonjury, noncontested or agreed case pending in the district. This was a nonjury case and does not fall within any of the exceptions listed in such article.

■ On the first of the three issues listed above, we hold that there is no evidence of probative force to support the judgment declaring the minor girl to be a dependent and neglected child on December 2, 1963, when the original judgment was entered. The judgment did not indicate which of the grounds alleged in the petition was made the basis of the judgment. The

only relevant findings of fact, made after the hearing on May 4, 1964, are as follows:

"That said child was approximately six months of age at the time of the initial hearing in said cause on December 2, 1963, under the age of 16 years, and was dependent upon the public for her support, was destitute, homeless and abandoned *until petitioners undertook her support*. Said child had not the proper parental care or a home *until petitioners gave her a home*, and no guardian had been appointed of her person or estate."[1]

It is doubtful that these findings will support the judgment of dependency. As we read them, all of the findings, except possibly the finding that the child was "dependent upon the public for support," relate to the time when the child was placed in the possession of the Currys some six months before the hearing and adjudication. Article 2330 defines a "dependent" or "neglected" child as one "who *is* dependent upon the public for support or who *is* destitute, homeless or abandoned; or who *has not* proper parental care or guardianship * * *." These provisions do not contemplate that an adjudication may be based solely upon conditions which existed in the distant past but no longer exist. But for purposes of this opinion we will assume that the findings relate to the time of the hearing and adjudication, and will examine the record for supporting evidence as of that time.

It is not seriously suggested by the Currys that there is evidence to support a finding that at any time from June 3rd to December 2nd the child was destitute, homeless or dependent upon the public for support. Indeed, the record shows as a matter of law that she was not. Admittedly, the child had no legal guardian of her person or estate. Our inquiry narrows, therefore, to determining whether there is in the record evidence of probative force that on December 2, 1963, the child was an "abandoned" child

or that she did not have proper parental care.

■ The trial court's finding of abandonment is based upon the admitted fact that the mother gave up possession of her child and consented to its adoption. The mother testified that before executing the consent to adoption she was assured by the attorney obtaining it that she could withdraw consent at any time prior to six months' residence of the child in the home of the adoptive parents. However, this testimony cannot be used as evidence of non-abandonment; the trial judge had a right to disbelieve it, and he evidently did disbelieve it inasmuch as he refused to find that the assurance had been given. We are thus left with the bare question of whether "abandonment" within the meaning of Article 2330 can be found as a fact from execution by a parent of a written consent to adoption and delivery of possession of the child to the proposed adoptive parents. We hold that it cannot.

■ It is settled law in this State that consent to adoption of a child, where required, can be withdrawn at any time before an adoption decree is entered. Wilde v. Buchanan, 157 Tex. 606, 305 S.W.2d 778 (1957); Boyed v. Wilson, Tex.Civ. App., 258 S.W.2d 223 (1953), writ refused. It follows that the acts of a parent in executing a consent to adoption and delivery of possession of a child pursuant thereto are done with the reserved legal right to withdraw consent at any time before entry of an adoption decree. With this legal right reserved, the parent does not "abandon" the child. A child is "abandoned" within the intent and meaning of Article 2330 when it is "deserted" by its parent or parents. One of the illustrations given by Webster's Third New International Dictionary of the meaning of the word "abandonment" is "desertion of a child by its parents." In the situation indicated, the child is not "deserted"; the acts are usu-

[1] Emphasis ours throughout.

ally done, as they unquestionably were in this case, for the purpose of better providing for the child's welfare. See Guardianship of Baby Girl Rutherford, 188 Cal. App.2d 202, 10 Cal.Rptr. 270, 98 A.L.R.2d 410 (1961). Article 46a, the adoption statute, requires parental consent to adoption except in certain circumstances. One of the circumstances in which consent is not required is where "a living parent or parents shall voluntarily abandon and desert a child." In that context "abandonment" was defined in Strode v. Silverman, Tex. Civ.App., 209 S.W.2d 415, 419 (1948), writ refused, n. r. e., in this language:

"Voluntary abandonment, as used in the adoption statute, * * * is used more in a sense of a wilful act or course of conduct, and such as would imply a conscious disregard or indifference to such child in respect to the parental obligation that the parent owes to such child."

See also Lee v. Purvin, Tex.Civ.App., 285 S.W.2d 405, 408 (1956), writ refused, n. r. e. The definition is a sound one and should also be followed in determining whether a child is an "abandoned" child within the meaning of Article 2330. It is all too plain to permit of quibbling that the acts of Mrs. Hendricks in signing the written consent to adoption and in giving up possession of her child were not such acts "as would imply a conscious disregard or indifference to such child" in respect to the parental obligations she owed her child.

 Neither, we hold, does the evidence in the record support the finding that on December 2, 1963, the child had not proper parental care. The term, "parental care," as used in the statute is purely descriptive; it refers to the kind and quality of care which should be, and ordinarily is, provided by parents. Webster's Third New International Dictionary defines the word "parental" as "appropriate to, characteristic of, or resembling a parent," as well as "of or relating to a parent." See also 67 C.J.S. p. 625. The statute does not

provide that a child is dependent and neglected when it is not provided proper care by its parents. If it did, we would have a different problem. "Parental care" may be provided by persons who occupy a parental position in the life of a child, either permanently or temporarily. Even the word "parent" when used in a statute is sometimes interpreted to include one who merely occupies the position of a parent. See Snowden v. State, 12 Tex.App. 105, 41 Am. Rep. 667–669 (1882), in which it was held that a statute providing that "the exercise of the right of moderate restraint or correction given by the law to the parent over the child" did not amount to an assault and battery, applied to a brother who stood *in loco parentis* to his younger sister.

We recognize that our interpretation of the term, "parental care," does not conform to an interpretation given it by some of the Courts of Civil Appeals. See Bee v. Robbins, Tex.Civ.App., 303 S.W.2d 827, 831 (1957), no writ history; Spangler v. Breashears, Tex.Civ.App., 359 S.W.2d 206, 208–209 (1962), writ refused, n. r. e.; Hendrick v. Voss, Tex.Civ.App., 334 S.W.2d 308, 315 (1960), no writ history. We are satisfied, however, that the interpretation we have given it more nearly conforms to the true intent and purpose of the Legislature in enactment of the statute. What are now Articles 2330–2337 first became a part of our statutory law in 1907. See 13 Gammel's Laws of Texas 135. By their enactment the Legislature asserted the overriding interest of the State in the "care, education, maintenance and moral and physical training" of its children. See DeWitt v. Brooks, 143 Tex. 122, 182 S.W.2d 687 (1944). One of the ways in which the statutes undertake to guard the interest of the State is by authorizing courts to commit the maintenance, education and training of dependent children to persons who can and will give them proper care. Article 2335. If proper "parental care," as used in Article 2330, means proper care by a child's parents, it would be the duty of a court to declare a child dependent once

again as soon as its care was undertaken by those awarded custody in the first adjudication. It would be a paradox to hold in cases such as this that a child *does not have* proper "parental care" when it is being cared for by persons to whom it has been delivered for adoption, but that it *does have* proper "parental care" when it is being cared for by the same persons under an award of custody by a court. Moreover, if the term means care by natural parents, courts on their own motion or on petition of total strangers would be required to declare dependent every child in a foster home regardless of the kind of care, training and education it was receiving.

■ That part of the judgment in cause No. 26,909 which adjudicates the minor girl to be a dependent child and terminates the parental rights of Betty Hendricks must be vacated. When it is vacated, there remains no legal basis for the judgment of adoption in Cause No. 26.910 inasmuch as Mrs. Hendricks withdrew her consent to adoption before the judgment was rendered and entered.

■ Only the issue of custody remains for our disposition. The legal right to custody of the child was in its mother on both December 2, 1963, and July 17, 1964; but the mother voluntarily surrendered possession and actual custody on June 3, 1963. By her pleadings filed in the two causes she sought to regain possession of her daughter. Under a long line of decisions by this Court, jurisdiction of the trial court was thus invoked to decide whether the child's welfare and best interests would be served by restoring possession and actual custody to the mother, the legal custodian, or by awarding both legal and actual custody to the Currys. Legate v. Legate, 87 Tex. 248, 28 S.W. 281 (1894); State ex rel. Wood v. Deaton, 93 Tex. 243, 54 S.W. 901 (1900); Dunn v. Jackson, Tex. Com.App., 231 S.W. 351 (1921), holding

approved; Davis v. Sears, Tex.Com.App., 35 S.W.2d 99 (1931), judgment approved; DeWitt v. Brooks, 143 Tex. 122, 182 S.W.2d 687 (1944). After a full hearing on May 4, 1964, the trial court awarded full custody of the child, legal and actual, permanently to the Currys, and thereafter made extensive findings of fact to support a legal conclusion that the best interests of the child would be served thereby.

We have held that the trial court erred in adjudicating the minor girl to be a dependent child. Rule 503, Texas Rules of Civil Procedure, directs that judgments not be reversed for harmless errors, and provides: " * * * and if it appear to the court that the error affects a part only of the matter in controversy, and the issues are severable, the judgment shall only be reversed and a new trial ordered as to that part affected by such error." The issues of dependency and custody are severable. The trial court made ultimate fact findings of Mrs. Hendricks' "unfitness" to have custody of her child and that an award of custody to the Hendrickses would not be in the child's best interests, and made detailed subsidiary fact findings in support thereof. It seems clear from the findings, however, that in deciding the custody issue the court gave great weight to a finding that Mrs. Hendricks "abandoned" her child, a fact which we have held is not supported by evidence. Under these circumstances we are not authorized to sever the issues in Cause No. 26,909 and affirm the judgment of custody.

The case is severed into two causes as they were filed in the trial court. The judgments of the Court of Civil Appeals and trial court in Cause No. 26,910 are reversed and judgment is here rendered denying the petition of Alton B. Curry and wife, Ann Curry, to adopt the Shellenberger child. The judgments of the Court of Civil Appeals and trial court in Cause No. 26,909 are reversed and the cause is remanded to the trial court for a new trial

of the custody issue, and with directions to vacate the judgment declaring the child to be a dependent child and terminating the parental rights of Mrs. Hendricks and to render judgment denying that relief.