Ray C. ADAMS and Pearl Adams, Appellants,

v.

J. D. HERD and June Herd, Appellees.

No. 5471.

Court of Civil Appeals of Texas, Waco.

Aug. 7, 1975.

C. J. Humphrey, Amarillo, for appellants.

Sanders, Miller & Baker, Oth O. Miller, Amarillo, for appellees.

OPINION

McDONALD, Chief Justice.

This is an appeal by Ray C. Adams and Pearl Adams from judgment 1) declaring their grandson Shawn Jerome Herd a dependent child; 2) denying appellants' petition to adopt such child; and 3) appointing the Child Welfare Department as managing conservator with authority to place such child temporarily in the home of a suitable family.

On December 29, 1972 Kaye McCall, Child Welfare Worker of Hutchinson County filed petition alleging Shawn Jerome Herd "dependent on the public for support * * * living with a vicious and disreputable person, and whose home by reason of neglect, cruelty or depravity on the part of its parent is an unfit place for such child * * * that because of the conditions under which said child is living and the imminent danger and peril that now exists to his health, welfare and safety, that unless an immediate order giving their custody to a suitable person and removing him from his present environment, irreparable harm and injury will result." The petition prayed the child be adjudged a dependent child.[1]

---

1. The dependent and neglected child proceedings were filed prior to the Repeal of Articles 2330–2337 V.A.T.S.; while the adoption petition noticed later was filed after the adoption of the Family Code.

The trial court fixed January 9, 1973 as date for hearing.

On January 9, 1973, Kaye McCall filed an amended petition for "Finding of Dependency and Neglect" alleging substantially as above, and in addition praying that pending hearing custody be given to a suitable person under supervision of the court.

The trial court on January 9, 1973, entered an order for any peace officer to take custody of the child and transfer him to the temporary custody of the Hutchinson County Child Welfare Department and set hearing for January 23, 1973.

On January 15, 1973, J. D. Herd and wife June Herd intervened alleging they were the paternal grandparents of the minor; alleged the minor dependent and neglected; and prayed the court to award them permanent or temporary custody.

On January 29, 1973, the trial court entered an order identical to the January 9, 1973, order setting hearing for February 13, 1973.

On February 20, 1973, the trial court entered an order identical to the January 9, and February 13, 1973, orders setting hearing for March 20, 1973.

On March 22, 1973, the trial court entered an order identical to the January 9, February 13, and February 20, 1973 orders, setting hearing on April 17, 1973.

Similar orders were entered by the trial court, placing custody of the child in Hutchinson County Child Welfare Department and setting hearing on the petition for September 25, 1974; October 17, 1974; and November 19, 1974.

Citation was served on Doneta M. Herd, the mother of the child, for the *November 19, 1974 hearing,* on November 4, 1974.

On November 12, 1974, Ray C. and Pearl Adams, maternal grandparents of the child, filed petition to adopt the child alleging the child was born September 9, 1971; that the child had been in their home since January 23, 1973, Doneta M. Herd the child's mother joined in such petition, and filed affidavit relinquishing parental rights; stating the child's father was dead; stating she joined in the Adams' petition to adopt her son; and designating the Adams as suitable persons to serve as managing conservator of the child if her parental rights were terminated.

Such petition for adoption was filed under the same number as the petition alleging the child to be dependent and neglected.

The trial court appointed Johnny Wright of the Department of Public Welfare in Amarillo to investigate, and set hearing for January 20, 1975.

Trial was before the court on January 20, 1975 which rendered judgment: 1) Adjudging Shawn Jerome Herd a dependent child; 2) Denying appellants petition for adoption; and 3) Appointing the Child Welfare Department Managing Conservator of the child with authority to place him temporarily in custody of a suitable family. Appellants and the Herd grandparents were given right of reasonable visitation.

The trial court filed Findings of Fact and Conclusions of Law, summarized as follows:

### Findings of Fact

1) Stipulations received that the child is dependent and neglected.

2) Kaye McCall of County Child Welfare testified the child was dependent and neglected on December 29 [1972].

3) Ray and Pearl Adams are husband and wife and live in Borger, Hutchinson County.

4) The Adams have lived in Hutchinson County 36 years, are 55 and 47 years old, and are in good health.

5) Shawn Jerome Herd is the Adams' grandson, being their daughter's son,

and was born September 19, 1972, at Borger.

6) The child has been in the care of the Adams since he was 2 months old, and was so at time of filing petition and at time of trial.

7) The Adams had been caring for the child and furnishing his necessities.

8) Ray Adams is a 35-year employee of Phillips Petroleum, employed as a senior operator, and is owner of a drive-in located at 207 Cedar, in Borger.

9) Pearl Adams does not work outside the home, except at the drive-in.

10) The child is a healthy 3-year old boy; with teeth chipping off due to calcium deficiency, and have been recapped by Dr. Longnecker.

11) The home situation is mutual love between the child and the Adams.

12) The Adams were cooperative with the investigator ordered by the court to make a social study which social study is made a part of the record.

13) The Adams asked the child's name be changed to Adams.

14) The Adams experienced upset in the past 2 years with their daughter, the child's mother, who in their opinion, is not a fit and proper person.

15) The Adams' home is occupied by them, Shawn Jerome Herd, a 4-month old baby, and the 13-year old son of the Adams.

16) The Adams are not suitable adoptive parents.

17) Shawn Jerome Herd's best interest is not reflected by the testimony by being in the custody of the Adams.

18) The Adams engaged in conspiracy to prevent service of court order, ordering immediate custody of the child, by secreting the child from the officers and Child Welfare Department.

19) Ray Adams has no memory of threatening and using abusive language toward a Child Welfare Worker, but remembers apologizing for same.

20) Pearl Adams remembers the threats and abusive language of Ray Adams.

21) The social study contains laudatory recommendation of the Adams by the references furnished by them.

22) The social study does not recommend the Adams as proper adoptive parents and granting the adoption would not be in the best interest of the child.

23) Intervenors Herd are paternal grandparents of the child and live in Skellytown.

24) J. D. Herd has worked for Skelly Oil for 24 years, and June Herd is employed by Cabot Corporation of Pampa.

25) Intervenors' home is a 3-bedroom carpeted house, 1300 square feet, occupied by intervenors only.

26) J. D. Herd's health is good except for gout and hearing difficulties.

### Conclusions of Law

1) The parental rights of the child's only living parent are terminated.

2) The court has jurisdiction.

3) The Adams are not proper adoptive parents.

4) The adoption of the child by the Adams would not be in the child's best interest.

5) The petition for adoption should be denied.

6) Removal of the child from the Adams' home is in the child's best interest.

7) An order appointing managing conservator is necessary for the child's welfare.

Appellants appeal on 30 points which we summarize into 3 basic contentions:

Contention 1. Points 1 thru 6 assert there is no evidence or insufficient evidence the child was dependent on January 20, 1975, or for any material period prior thereto; and that the trial court erred in accepting stipulations that the child was dependent and neglected.

■ The record conclusively shows that the child was not a dependent and neglected child on January 20, 1975, or at any time during the previous 2 years. In fact the trial court found that the child had been in the care of appellants since he was 2-months old; that appellants had been caring for the child and furnishing his necessities; that the child is a healthy 3-year old boy; and that the home situation reflects mutual love between the child and appellants.

■ An adjudication that a child is dependent and neglected may not be based solely on conditions which existed in the distant past but no longer exists. *Hendricks v. Curry*, S.Ct., Tex., 401 S.W.2d 796; *Hogan v. Roop*, CCA, NWH, Tex.Civ.App., 500 S.W.2d 936.

But appellants stipulated that the child was a dependent and neglected child, which stipulation is totally contrary to the undisputed record.

Contention 2. Points 7 thru 19 are levelled at that portion of the judgment appointing the Child Welfare Department as managing conservator of the child with authority to place the child in the home of a suitable family. Such points assert among other matters that Finding 17 that the child's best interest is not being in custody of the Adams, and Conclusion 6 that removal of the child from the Adams' home is to his best interest, are so contrary to the overwhelming weight and preponderance of the evidence as to be clearly wrong and manifestly unjust.

■ The Adams are the only persons at this time who seek to adopt the child. They are the maternal grandparents and have had custody of the 3-year old child since he was 2 months old. The child's father is dead and the mother designated the Adams to be conservators and they were appointed temporary conservators by the trial court. The record disclosed that the Adams are good people; Mr. Adams has worked 35 years for Phillips Petroleum; the Adams' neighbors give them laudatory recommendation; they are Church members. Mr. Adams became upset at the efforts of the Welfare Department to take his grandson and said and did things he should not have done. But he apologized almost immediately. The investigator's report questioned their reputation, but there is insufficient evidence in the record to substantiate this. And the investigator's report recommended placing the child outside the Adams' home. There is insufficient evidence to sustain such recommendation.

Contention 3. Points 20 thru 30 are levelled at that portion of the judgment denying the Adams' petition for adoption. Such points assert among other matters that Finding 16 that the Adams are not suitable adoptive parents; and Conclusions 4 and 5 that the adoption of the child by the Adams would not be in the child's best interest and should be denied, are so contrary to the overwhelming weight and preponderance of the evidence as to be clearly wrong and manifestly unjust.

Our recitation under Contention 2 is applicable here. The record as a whole reflects that the Adams are stable citizens; are the only people disclosed by the record desiring to adopt the child; and are the child's maternal grandparents.

We sustain Contentions 2 and 3 *supra*.

■ From the record as a whole we hold that the finding and conclusion that removal of the child from the Adams' home is for his best interest; and the finding and con-

clusions that the adoption of the child by the Adams is not in the child's best interest; are so against the great weight and preponderance of the evidence as to be wrong and manifestly unjust. *In re King's Estate*, 150 Tex. 662, 244 S.W.2d 660.

Moreover from the record as a whole we believe a remand is in the interest of justice. *Scott v. Liebman*, S.Ct., Tex., 404 S.W.2d 288.

Upon retrial appellants should have the right to withdraw their stipulation that the child is dependent and neglected, if they so desire.

Reversed and remanded.