**Naida CRAHAN, Appellant,**

v.

**N. R. and L. R., Appellees.**

**No. 18124.**

Court of Civil Appeals of Texas, Fort Worth.

April 26, 1979.

Rehearing Denied May 24, 1979.

Geoffrey M. Gay, West Texas Legal Services, Fort Worth, for appellant.

Roy A. Davis, Irving, for appellees.

## OPINION

MASSEY, Chief Justice.

In a suit by Naida Crahan to regain custody of her natural born minor child the judgment of the trial court, sitting without a jury, denied transfer and deprivation of such custody from N. R. and L. R., who had continued in possession of the child since it was three days old. She appealed.

We affirm.

Actually the form of suit was as by petition for relief by *habeas corpus*. By the subject matter it was a simple suit for custody of a child; it will so be treated.

Naida Crahan conceived and bore the minor child in question by a man other than her husband. Her husband was not made a party to this suit for custody. She will hereinafter be termed as the natural mother, with N. R. and L. R., husband and wife, referred to as the existing custodians.

The natural mother bore the child in Ohio on May 2, 1977. By pre-arrangement with L. R. she had registered with her doctor and the hospital under the name of L. R., giving the name of her husband as N. R. When the child was born it was given the name to which the parties had agreed, so that at all times it appeared on the records of birth in Ohio as the natural child of N. R. and L. R.

Three days after the child was born it was delivered over to N. R. and L. R., and a few weeks thereafter they moved from Ohio and became residents of the State of Texas. January 17, 1978 in Texas, in an-

other suit in District Court, N. R. and L. R. filed a petition to adopt the child. In that proceeding an attorney was appointed to represent the child, with another appointed attorney *ad litem* to represent the "unknown parents". Through efforts of the *ad litem* attorney the natural mother was notified. Thereafter she answered in the adoption suit, and caused it to be abated pending disposition of the instant custody suit which she filed in the interim on April 20, 1978. This state of affairs presently persists pending disposition of the appeal of the custody decree.

Prior to enactment of the Texas Family Code, our law was well settled that the determinative issue in a case of this nature was whether the child's welfare and best interests would be served by restoring possession and actual custody to the mother, the legal custodian, or by awarding both legal and actual custody to party or parties to whom there had been antecedent surrender of possession. *Hendricks v. Curry,* 401 S.W.2d 796, 802 (Tex.1966), and authorities cited.

It is the law as stated above which is attacked by Naida Crahan, the natural mother. She seeks to persuade this court to declare unconstitutional, at least in their application under the circumstances of this case, certain provisions of law in the Texas Family Code, which in material part provide:

"Title 2, PARENT AND CHILD; Subtitle A., The Parent-Child Relationship and the Suit Affecting the Parent-Child Relationship § 11.11, 'Temporary Orders'.

"(a) In a suit affecting the parent-child relationship, the court may make any temporary order for the safety and welfare of the child, including but not limited to an order:

"(1) for the temporary conservatorship of the child; . . . ."

§ 14.07, "Best Interest of Child".

"(a) The best interest of the child shall always be the primary consideration of the court in determining questions of managing conservatorship, possession, and support of and access to the child. . . .

"(b) In determining the best interest of the child, the court shall consider the circumstances of the parents"

"§ 15.02, "Termination When Parent is Not Petitioner".

"A petition requesting termination of the parent-child relationship with respect to a parent who is not the petitioner may be granted if the court finds that:

"(1) the parent has:

"(A) voluntarily left the child alone or in the possession of another not the parent and expressed an intent not to return; or

"(B) voluntarily left the child alone or in the possession of another not the parent without expressing an intent to return, without providing for the adequate support of the child, and remained away for a period of at least three months; or . . . ."

In particular, as regards the foregoing, the natural mother complains of the absence of explicit guidance as to what is to be considered by those who are charged with the duty to apply the "best interests" test. She charges that the sections from which we have quoted permit arbitrary and discriminatory application of ad hoc and subjective determinations of what is the best interests of a child; that in the instant case the application of the best interest test inescapably would be a reflection of a judge's values and personal and class bias. Further, she charges that, without guidance, the allowable test would lead to forbidden intrusion of family integrity; applicable not only against those individuals who pose a danger to a child, but also to those whose tenets of child rearing differ from those who construe and apply the test, thus infringing upon a fundamental right—or prior right—of a parent to his or her child.

Under pre-Family Code Law in Texas a natural parent, or parents, might voluntarily relinquish right to custody of a child either by agreement or by abandonment; and in a subsequent contest over its custody between the parent and the persons to whom the child has been relinquished the

burden would lie upon the non-parental parties to show reason why the child should not be restored to the natural parent. The evidence by which that would be shown would be that which would show that it would be in the best interests and welfare of the child that it not be delivered to the natural parent and/or that the new custodians continue to be such.

The issue would be raised upon presentation by the non-parental parties of any evidence upon the strength of which the trier of the fact might find that the best interests of the child required that by formal decree the custody should remain in those who might be the existing custodians or, in any event, should not be restored to the natural parent. Thereupon the decision would rest upon issues raised by the evidence of facts from which the ultimate conclusion would be derived upon the matter of "best interests".

The foregoing has long been recognized as the law. Its application has been by force of statutory law enacted upon the premise that the State has such an interest in the welfare of its citizens as to warrant exercise of its authority. *De Witt v. Brooks,* 143 Tex. 122, 182 S.W.2d 687, 690–691 (1944).

■ It is obvious that as applied to the elements of law upon which there was operation by the statutes in force prior to the Texas Family Code there was not intended any change of the law. We see no justifiable reason to hold the sections of the Family Code which are here attacked to be either unconstitutional generally or to be unconstitutional in their application to the circumstances of this case. There has been like holding to the same effect on an occasion when the use of "best interests", without limitation, was charged to be a want of "due process of law" and "equal protection of law." *Van Wart v. Van Wart,* 501 S.W.2d 359 (Tex.Civ.App.—Austin 1973, no writ).

■ By the record before us we find that there was evidence which supported the judgment of the trial court by the pre-

ponderance of the evidence test, which we hold the proper test. The judgment could not be reversed on any theory of defect in or insufficiency of the evidence. Overlooked on trial was the important matter of the circumstances of the child in its life with N. R. and L. R., but proved were sufficient facts concerning the probable unfavorable circumstances and environment in which the child would live should the court award its custody to its natural mother.

■ Remaining for consideration are questions upon the law in the State of Ohio, and the applicability of such laws, if in order, to the circumstances of the instant case. The natural mother here, as in the trial court, has presented Ohio statutes upon which she relies in support of her contention that her agreement and grant of custody to N. R. and L. R., which occurred in Ohio, was illegal, invalid and ineffective to transfer to them any right to the child, or to impair her own prior right. We see no occasion to lengthen the opinion by writing upon the Ohio law. It has been examined and there is nothing in it which impaired the authority of the Texas trial court to render the judgment made in this case.

The child was in Texas and all parties yielded themselves and were present and participating before the court without reservation. The State of Ohio was not a party to the action. Had it ruled differently the trial court would have risked a degree of hazard. Involved would have been a delivery of the child to a party at a time when the court had concluded that it would not be in the "best interests" of the child so to do. To be observed is that there was no other state prepared to assume responsibility for the welfare of the child. In Texas the responsibility was, and would have remained, devolved upon the courts of such state. There was no point of error which we should sustain based upon Ohio law.

We agree with the natural mother that the circumstances, though indicating proper use against her on equitable grounds the law relative to waiver, estoppel, and guardianship, are nevertheless improper to be used in support of the judgment in this

case. However, for us to so declare does not avail her of any right to reversal. The material issue in the case, as we have already held, was the "best interests" of the minor child involved. These are rights of the child which are paramount though they may or may not be in opposition to the interests or the contentions of the parties, either or both.

The proceedings were equitable in nature, but, contrary to the rules in most equity cases the fact that either or even both the formal parties might be appearing without "clean hands" (and that is the condition in which all the parties appeared before the trial court under the circumstances of this case) would not impair the right of the child. The questions thereon arisen are immaterial, and, because they are immaterial, the point of error founded thereon is overruled. 4 Pomeroy's Equity Jurisprudence (5th Ed.) "Infants", § 1307 (1941) "(Extent of the Jurisdiction)—Custody of Infants" at 874.

Deeming the points of error to be without merit or immaterial, we conclude our proper order to be one which affirms judgment of the trial court.

Judgment is affirmed.