**In re ADOPTION OF Molly Page ARMSTRONG, a Minor.**

**No. 5618.**

Court of Civil Appeals of Texas.

El Paso.

Sept. 11, 1963.

Rehearing Denied Oct. 16, 1963.

Morgan & Boling, El Paso, for appellant.

W. O. Craft, El Paso, for appellee.

CLAYTON, Justice.

This is an appeal from an order of the 120th District Court of El Paso County,. Texas overruling a motion for new trial' and affirming the decree of the court which granted a petition for adoption of the minor child, Molly Page Armstrong, then between four and five years old, by the petitioner, Salvatore E. Manzo, in which petition his wife, Alice Flournoy Davis Manzo, the natural mother of the minor, joined. The motion for new trial was filed by appellant R. Wright Armstrong, the natural father of the child. Appellant and appellee, Alice Davis Manzo (formerly Alice Flournoy Davis Armstrong) were divorced' by decree of the 96th District Court of Tarrant County, Texas on November 6,. 1959. Custody of the minor child of the parties was awarded to the mother, with visiting privileges granted to the father. The divorce decree contained the provision that the community and separate property of the parties be distributed by agreement of the parties, and the further provision that the father was to pay into the

Child Support office of Tarrant County "the sum of $50.00 per month, beginning November 16th, 1959, and continuing thereafter on the 16th day of each succeeding month until further order of this court, or until said child shall reach 18 years of age." Appellant made one payment of $50.00 into the Child Support office in November of 1959 and in February of 1960 he made a payment of $150.00 into the office. While it may perhaps be said that there is some ambiguity in the trial court's support order as to the application of the $50.00 monthly payments when made, it is our opinion that the payment in November, 1959, was for the month of November, and the $150.00 payment in February, 1960, was for the months of December, 1959, January, 1960, and February, 1960. There were no further payments into the Child Support office. The appellant here contends that these two payments covered the period from November 16, 1959 to March 16, 1960. The verified petition for adoption was filed on March 12, 1962 and alleged that:

"7. Written consent of the natural father R. W. ARMSTRONG, JR., to the adoption herein sought is not necessary upon grounds that the said father has not contributed to the support of said minor child commensurate with his ability to do so for a period in excess of two (2) years, and the Judge of a Juvenile Court of El Paso County, Texas, to-wit: Judge Mulcahy, Judge of the 41st Court, has consented in writing to said adoption under provisions of Section 6, Article 46A, Texas Civil Statutes."

Appellant's first point cites error of the court in not rendering judgment for appellant setting aside the adoption because there is no evidence that appellant failed to contribute substantially to the support of the child for a two-year period prior to the filing of the petition for adoption, commensurate with his financial ability, or that such finding was against the great weight and preponderance of the evidence. Appellant states the child support having

been paid until March 16, 1960, that for at least four days of the alleged two-year period the appellant had contributed support to his daughter. However, our interpretation of the court's support order, as indicated above, is that support payments into the Child Support office covered a period of time through the month of February, 1960, only, and that the adoption petition was filed twelve days thereafter.

But appellant asserts that he had made other payments and contributions in addition to those made to the Child Support office, which should be considered child support payments. After the divorce, the minor child on occasions visited her father and grandparents, with whom her father resided, in Fort Worth. Appellant states that on one of these occasional visits, in the summer of 1961, he "bought her some clothes" and "bought her lots of toys" and took her to a production of the Wizard of Oz, the total of these expenditures running "in the neighborhood of $75.00." The following Christmas, on another visit, he "took her to a clothing store and purchased three dresses and a purse for her for Christmas" at a cost of $50.00.

In February of 1960, after the divorce from appellant was granted appellee Alice Davis Manzo in November, 1959, their house was sold for an amount slightly in excess of a thousand dollars. Appellant contends that it was his understanding that the proceeds from this sale were to be divided between the parties on a fifty-fifty basis but that he directed that the majority of the money be sent to his ex-wife "for the benefit of the child". He testified that Mrs. Manzo received somewhere in the neighborhood of $875.00 and that he received something like $150.00 or $160.00. However, there was introduced in evidence a property settlement agreement executed by the parties before the divorce and reaffirmed and ratified by the parties after the divorce which contains the following paragraph:

"During their marriage, the parties occupied as their home the residence

located at 6853 Middle Road, Fort Worth, Texas. Two Thousand Five Hundred Dollars ($2,500.00) of the down payment for such property was paid out of the separate funds of Flournoy D. Armstrong. In the event that a divorce be granted in the above mentioned suit, such property shall be sold within a reasonable time for the best available offer, taking into consideration the condition of the real estate market, and the net proceeds, if any, therefrom shall be pro rated between the parties proportionate to the separate interest of Flournoy D. Armstrong therein and the community interest of the parties therein. The parties hereto shall execute any instrument necessary or desirable to consummate such sale."

This provision certainly seems to be at variance with, and refutes, appellant's claimed understanding as to the equal division of the proceeds of the sale of the home, and that any part of his share of these proceeds was to be considered a contribution by him to child support.

■ During the period of time after the divorce and up until the date of filing of the adoption petition the appellant had been, on various occasions, ill, unable to work and in the hospital. However, according to our calculations from the evidence presented, appellant had earned during this period an amount in excess of $4,200.00, at least $3,500.00 of which was earned in the two-year period prior to the filing of the adoption petition. For the entire period since the divorce he had paid only $200.00 into the Child Support office. Appellant was a duly licensed and practicing attorney living in Fort Worth, Tarrant County, Texas where the divorce decree with child support order was entered, but he at no time made any effort to have the support order modified or to obtain credit from the Child Support office for the contributions and expenditures he claims to have made for the benefit of his minor child

in addition to the two payments made directly into the office. Aside from what income he received in his law practice, he had been employed at various times as Assistant City Attorney, substitute judge of the Corporation Court and finally filled a vacancy as full-time Corporation Court judge in Fort Worth. He was living with his parents who were not only furnishing him food and shelter but paying many incidentals such as carfare, haircuts and laundry. He was either employed in public office without expense, or working in a law office without expense. At the time of the filing of the adoption petition he was employed as Corporation Court judge at a salary of $239.44 every two weeks and had been so employed for about a month. He had bought a Pontiac automobile. He testified that he had paid off community debts, but even in this his family helped him. We feel that, from the record, the conclusion is inescapable that the appellant failed to contribute substantially to the support of his child for a two-year period prior to the filing of the petition for adoption commensurate with his financial ability, and the trial court so found in his Conclusions of Law. Appellant's first point of error is accordingly overruled.

■■ However, appellant urges in his second point of error that the provisions of Section 6 of Article 46a, Vernon's Ann. Tex.Rev.Civ.St., had not received full compliance. This is the statutory provision that permits an adoption without the written consent of a living parent of the child sought to be adopted when such parent shall not have contributed substantially to the support of such child during a period of two years *commensurate with his financial ability*, upon written consent to the adoption by the judge of the juvenile court of the county of such child's residence. Appellant points out that neither the affidavit accompanying the adoption petition nor the consent of the juvenile judge herein contained the italicized language. The cases of Moorman v. Hunni·

·cutt, 325 S.W.2d 941 (Tex.Civ.App., 1959, ref. N.R.E.) and Stinson v. Rasco, 316 S.W.2d 900 (Tex.Civ.App., 1958, no wr. hist.) are cited as authorities that the provisions of the statute must receive strict compliance. The latter case holds:

"While adoption statutes are to be liberally construed in favor of minors in order to effectuate their beneficial purpose, Woodall v. Schmudlach, Tex. Civ.App., 299 S.W.2d 780, the rule of strict construction applies in favor of a non-consenting parent. Jones v. Willson, Tex.Civ.App., 285 S.W.2d 877. Especially so 'in those cases where it is claimed that owing to misconduct his consent to the adoption is not required. Every intendment should be made in such case in favor of the parent's claim; and where the statute is open to construction and interpretation, it should be construed in support of the parent's natural rights.' 1 Am. Jur. pp. 626, 627."

We agree with the holding in these cases. But in the instant case the petition contained allegations strictly in conformance with the statute and this petition was verified by the affidavit of both petitioners for the adoption. We believe that in determining whether there has been compliance with the statute, the whole record should be examined, and such an examination in the instant case, in our opinion, reveals full compliance; and as has been shown, it is our further opinion that the allegations of the petition have been supported by testimony herein.

█ Under Point Two appellant further complains that there was no showing that the requirements of Sec. 1c of Art. 46a, T.R.C.S., had been met. This section reads as follows:

"Sec. 1c. After the filing and docketing of the petition, *and in order to aid in completing the investigator's report required by law, there shall be fur-* *nished upon the request* of the Judge of the Court in which said application is pending, or the investigator appointed by the Court, or the Executive Director of the State Department of Public Welfare, the following information: (1) the name of the child as it appears on the birth certificate; (2) the names, residences, and/or street addresses of the natural parents; or if the names and addresses of the natural parents or the name of said child are unknown to the petitioner, such fact or facts should be so stated to either the Judge, investigator, or the Executive Director of the State Department of Public Welfare *requesting such information,* in which event there shall be furnished in response to such request, the name and address of any person, agency or institution having such information." (Emphasis supplied.)

█ The record herein reflects that a certified copy of the adoption petition was mailed by the Clerk of the Court to the Executive Director of the State Department of Public Welfare in Austin, Texas, in compliance with the provisions of Sec. 1b of said Art. 46a, T.R.C.S. The judge of the trial court made a Finding of Fact that he did not request, nor did the report of the investigator show that the investigator requested any of the information set forth in Section 1c, Art. 46a, supra. There is nothing in the record to indicate that the Executive Director made any such request. Had he done so, and appellees failed to furnish the information in response to such request, this certainly would be a factor to be shown by appellant in seeking to set aside the decree of adoption for want of jurisdiction of the trial court. We do not feel that it was incumbent upon appellees to negative the fact of such request, especially as the point was not raised in either appellant's first or amended motion for a new trial. For these considerations, the objections raised in appellant's Point No. 2 are overruled.

**412**

Appellant's third point urges the unconstitutionality of Article 46a, T.R.C.S., in that it permits an adoption without notice to or consent of a natural parent, thereby depriving such parent of his child without due process of law. Point Four maintains that the trial court erred in not rendering judgment for appellant setting aside the adoption because the undisputed evidence shows that the adoption judgment was obtained without any notice to appellant. That no notice was given appellant before the adoption is undisputed, but the necessity for such notice depends upon the answer to Point No. Three.

This matter was passed upon in the case of Lee v. Purvin, 285 S.W.2d 405 (Tex. Civ.App., 1955, wr. ref., N.R.E.) and we have been unable to find any later expression on the subject. The language employed in the cited case is as follows:

"The ninth point in appellant's brief is as follows: 'Art. 46a of Revised Civil Statutes of Texas, permitting an adoption of appellant's children without his consent and without notice to him of any nature of such adoption proceedings is an unconstitutional deprivation of petitioner's children without due process of law and void.' Although this court entertains serious doubt as to the correct solution of the problem presented by the foregoing point, we are constrained to overrule the contention of appellant thus presented on the authority of Dendy v. Wilson, 142 Tex. 460, 179 S.W.2d 269, 151 A.L.R. 1217 and De Witt v. Brooks, 143 Tex. 122, 182 S.W.2d 687. We believe, however, that where the living parents are without notice of adoption proceedings, and where they do not give written consent for such adoption, they must be allowed a full hearing in a subsequent proceeding on the issue of whether sufficient facts existed as to authorize the entry of the judgment of adoption. Such, as we understand it, is the substance of the holding by the Supreme Court in the case of De Witt v. Brooks, 143 Tex. 122, 182 S.W.2d 687, supra."

A full hearing was afforded the appellant in the case before us on his amended motion for new trial, and the court after said hearing found against appellant and affirmed its original judgment of adoption. We must conclude that this case comes within the purview of the holding in Lee v. Purvin, supra, and that appellant's third and fourth points must be overruled.

The judgment of the trial court is accordingly affirmed.