**Wesley GRIDER et ux., Appellants,**

v.

**James Kennington NOONAN et ux., Appellees.**

No. 359.

Court of Civil Appeals of Texas.

Corpus Christi.

Feb. 27, 1969.

Paul Hill, Corpus Christi, for appellants.

Fischer, Wood, Burney & Nesbitt, Scott T. Cook, Corpus Christi, for appellees.

## OPINION

SHARPE, Justice.

Appellants instituted this action by filing a "Motion for Bill of Review" on October 10, 1966, to set aside two judgments

of the Court of Domestic Relations for Nueces County, Texas, and for custody of the minor child, Linda Nell Colgan. The first judgment was rendered on April 2, 1964, and declared Linda to be a dependent and neglected child and placed her care and custody with appellees. The second judgment was rendered on February 12, 1965, and granted adoption of Linda by appellees.

The appellants are Imogene Colgan Grider and her third husband, Wesley Grider. The latter is neither the father or legal guardian of the minor child and does not contend that he is entitled to her custody except as the present husband of Imogene Colgan Grider. Appellant Imogene Colgan Grider is the natural mother of the child and the real party appellant as to the issues here involved. We will therefore refer to Imogene Colgan Grider as "appellant". Any reference to Wesley Grider will be by name. The appellees are James Kennington Noonan and wife Thena Carson Noonan. They have had the custody of Linda, who under the adoption decree is named Linda Kay Noonan, since March 1964.

■ Appellant did not have notice of either of the above-mentioned proceedings or judgments affecting her daughter Linda. In April 1964, when the judgment declaring Linda a dependent and neglected child was rendered, appellant was not a resident of Nueces County and her whereabouts were unknown to her mother and other persons who would ordinarily know the same. When the adoption case was heard on February 12, 1965, consent for adoption was given by the same court which had rendered the first judgment of April 2, 1964. On the non-jury trial of the instant case the lower court properly imposed the burden of proof on the appellees, and entered a separate preliminary order to that effect. See Armstrong v. Manzo, 380 U.S. 545, 85 S.Ct. 1187, 14 L.Ed.2d 62 (1965); on remand 394 S.W.2d 552 (Tex.Civ.App., 1965); Gunn v. Cavanaugh, 391 S.W.2d 723 (Tex.Sup.Ct., 1965); DeWitt v. Brooks,

143 Tex. 122, 182 S.W.2d 687 (1944). The trial court denied all relief sought by appellants and rendered judgment in favor of appellees. Among other things the trial court concluded in substance that appellant in July 1963, had abandoned her child, Linda; that Linda was abandoned when the judgment of April 2, 1964, declaring her to be a dependent and neglected child was rendered; that the child had been duly adopted by appellees; and that her custody should remain with them. The complete findings of fact and conclusions of law made by the trial court are as follows:

## "FINDINGS OF FACT

"(1) That in July, 1963, Imogene Colgan Grider, the natural mother of the minor child, Linda Nell Colgan, now Linda Kay Noonan, left and deserted such child with the intention of permanently abandoning such child.

(2) That the minor child, Linda Nell Colgan, now Linda Kay Noonan, remained abandoned by Imogene Colgan Grider until and after the month of April, 1964.

(3) That Imogene Colgan Grider was divorced from Richard Colgan, the natural father of the minor child, Linda Nell Colgan, now Linda Kay Noonan, in 1961, and thereafter never contributed to the support of such child or sought or had custody of the child and is not a party to these proceedings.

(4) That it is for the best interests and welfare of the minor child, Linda Nell Colgan, now Linda Kay Noonan, that her care, custody and control remain in and be awarded to the Respondents, James Kennington Noonan and wife, Thena Carson Noonan.

(5) That Respondents, James Kennington Noonan and wife, Thena Carson Noonan, are fit and proper persons to have the custody, care and control of the minor child, Linda Nell Colgan, now Linda Kay Noonan."

"CONCLUSIONS OF LAW"

"(1) That the proceedings in Cause No. 82,186 and Juv. No. 3988, styled In re: Linda Nell Colgan, a Minor, in the Court of Domestic Relations of Nueces County, Texas, were regular and were carried on in the manner required by law and sufficient facts existed at the time of the entry of the order to authorize entry of the judgment of dependency and such judgment is valid and of full force and effect.

(2) That the proceedings in Cause No. 84,776 and Juv. No. 4167, styled In re: Adoption of Linda Nell Colgan, a Minor, in the Court of Domestic Relations of Nueces County, Texas, were regular and were carried on in the manner required by law and the Decree of Adoption entered therein is valid and of full force and effect."

Appellant asserts twelve points of error which have been briefed in five groups. Appellees have answered appellant's contentions by five reply points. The contentions so made by the parties will be considered in the order briefed.

■ Appellant's first three points contend in substance (1) that the trial court erred in finding that appellant left and deserted her child Linda in July 1963, with the intention of permanently abandoning such child; and (2) that Linda remained abandoned by appellant until after the month of April, 1964; and (3) that the trial court erred in refusing appellant's requested finding that appellant was unable to ascertain the whereabouts of her minor daughter Linda from December 1963 until September 1966. Appellees' first reply point asserts that the findings of the trial court concerning abandonment and its continuance are supported by evidence. The contentions made by appellant under her points one and two are "no evidence" or legal insufficiency points and we consider them under well settled rules that we must view the evidence in the light most favorable to the findings and to appellees,

and indulge every inference which may properly be drawn from this evidence while disregarding all contradictory evidence.

The record reflects that appellant has been married two times prior to her present marriage with Wesley Grider, and is the natural mother of three children, whose names and ages at the time of the trial in 1967 were as follows: Toni White, age 14, born to the first marriage; Richy Colgan, age 11, and Linda Kay Colgan, age 8, born during the second marriage. Appellant was divorced from her two previous husbands, and had the legal custody of all three children. The actual custody of the second child, Richy Colgan, had been voluntarily surrendered to the boy's father Richard Colgan, of Denver, Colorado. In July 1963 appellant resided in Denver, Colorado with Toni and Linda, then ten and four years of age, respectively. Appellant's mother, Mrs. Arvenia Lane, also resided in Denver at that time but lived separately from appellant with a family for which she did housekeeping work. Mrs. Lane testified in substance that on a Thursday in July 1963, she went to visit her daughter and the two children at appellant's apartment in Denver. Mrs. Lane agreed to stay with the children that day and, along with another lady who was a baby sitter, took them to a park. When Mrs. Lane and the others returned to appellant's apartment, appellant was gone. Appellant did not tell Mrs. Lane that she was leaving town, made no arrangements for the care of her two daughters, and did not leave any money for their support. When appellant failed to return, Mrs. Lane hired a baby sitter to care for the children, paying her $20.00 per week. In September 1963 Mrs. Lane solicited the assistance of her brother, Mr. Reggie Logan, who lived in Hereford, Texas. Arrangements were made to send the two girls by bus from Denver, Colorado to Hereford, Texas. Toni, the oldest girl, was then placed in the care of a friend named Stanley Fry. During the first part of October 1963, Linda, the youngest child, was sent to Corpus Christi, Texas to live

with Mrs. Lane's half-sister and brother-in-law, Mr. and Mrs. Ralph Carter. In August 1964, Mr. and Mrs. Carter arranged to take Toni to the South Texas Children's Home in Beeville, Texas. There application was made, with the assistance of Mrs. Arvenia Lane, for admission of Toni into the Home. The application contained a statement that appellant had left the child over a year previous to August 1964 and had not been heard from since. This was confirmed to be a true statement by Mrs. Lane and Mr. and Mrs. Carter. Under a written agreement, the placement of Toni in the Home was to be permanent. According to Mrs. Lane's testimony, both Toni and Linda were under the same circumstances with respect to the absence of their mother, the appellant.

The testimony of Mr. and Mrs. Carter reflects that during December 1963 they, along with Linda, traveled to Denver, Colorado and made an effort to locate appellant. They found, through inquiry at the Police Department, where appellant was temporarily residing in that city and left a message for appellant to call them. The Carters also contacted Linda's father, Richard Colgan, while in Denver. Colgan did not know the whereabouts of appellant. Mrs. Carter testified that Colgan talked to her on the telephone and took the position in substance that he had no interest in Linda's custody. The Carters and Linda then returned to Corpus Christi. They contacted Dr. Colson, director of the Baptist City Missions, about placing Linda for adoption. Dr. Colson arranged for the Carters to meet appellees. In March 1964, Linda was allowed to live with Mr. and Mrs. Noonan, the appellees. Thereafter, appellees employed an attorney to advise them. The proceeding to declare Linda a dependent and neglected child was then instituted. Appellees did not have any information concerning the whereabouts of appellant, and she was not served with process. The Court of Domestic Relations of Nueces County, Texas, on April 2, 1964 entered an order declaring Linda to be a dependent and neglected child. On February 12, 1965, the same court granted appellees' petition for adoption, filed on December 1, 1964, and entered an order granting adoption of Linda by appellees.

Appellant's testimony concerning her whereabouts and activities for the period from July 1963 to the date of filing the instant suit on October 10, 1966, is in substance as follows: Appellant left Denver, Colorado in July 1963 without telling her mother or anyone else where she was going, how long she would be gone, or whether she would ever return. Her ascribed reason for leaving Denver was because of harassment and mistreatment by her second husband, Richard Colgan, which made it difficult for her to retain employment as a cocktail waitress or in night clubs. Appellant traveled to Las Vegas, Nevada, where she met a woman friend and together they went to San Francisco, California, where they stayed a few days. They then traveled to Long Beach where appellant met Wesley Grider. After three weeks or so, appellant and Grider went to Tijuana, Mexico where they were married on October 2, 1963. Appellant testified that in December 1963, she returned to Denver and stayed with friends. The Denver Police Department had left a request for appellant to contact it and she did so. She was advised by a member of the police department, after looking at appellant and a picture, that he was satisfied she "was no longer missing"; that the Carters were then in Denver and wanted to adopt Linda. Appellant while in Denver also contacted her second husband, Richard L. Colgan, who advised her that the Carters had theretofore contacted him about the whereabouts of appellant, and Colgan told them he did not know where appellant was and had not seen her in several months. Appellant also testified that while in Denver in December 1963 she called Mrs. Lane, her mother, and Mrs. Lane hung up the telephone when she heard appellant's voice. Appellant conceded that she made no attempt to contact the Carters after receiv-

ing the above-mentioned information concerning Linda, and she then returned to Murro Bay, California, where she and Wesley Grider then lived. Appellant also testified that around Easter of 1964 she returned to Denver and could not get any response out of her mother or other people of whom she made inquiry concerning her two daughters. At one point in her testimony appellant conceded that on her second trip back to Denver in about April 1964, her second husband, Richard Colgan, told her that Linda was with the Carters in Corpus Christi; but appellant said she still was not sure about Linda's whereabouts. Appellant again did not make any attempt to contact the Carters, but returned to Murro Bay, California. In July 1964 appellant and her husband moved to Long Beach. About Christmas of 1964 appellant again returned to Denver, and called her mother on the telephone. Mrs. Lane said the children were in the State of Texas. Appellant then called Wesley Grider in California and he picked her up and drove to Minnesota where his parents lived. After about six months employment in La Port, Minnesota, in July 1965 appellant and her husband moved to Cloquet, Minnesota, where they have continued to reside. In about October 1965, appellant said her mother told her that the children were together in a Baptist Home in the State of Texas. In December 1965, appellant traveled from Cloquet, Minnesota, to Dallas, Texas, where with the assistance of an aunt she found that her oldest daughter, Toni, was in the South Texas Children's Home in Beeville, Texas. Appellant then traveled to Beeville, where she was met by her mother, and began arrangements to secure custody of Toni. Appellant said her mother at that time did not remember the name of the people who had custody of Linda. Appellant returned to Cloquet, and in January 1966 was advised by the Children's Home in Beeville that Toni would be released to her. Appellant then returned to Beeville and took Toni back to Cloquet where she has since lived with appellant and Grider. In May 1966, appellant said

she called Mr. Ralph Carter of Corpus Christi, who referred her to a W. H. Colson of the Baptist City Mission in Corpus Christi. Appellant then called W. H. Colson who advised that the people who had Linda lived in the Robstown, Texas area. Appellant also called a Baptist minister in Robstown, who could not give her any information about Linda. Appellant also said in February or March 1966, she had solicited the aid of the Carlton County Minnesota Welfare Department. In September 1966, appellant, Grider, and Toni drove to Corpus Christi, Texas. There appellant talked with Mrs. Carter, who gave her the name of the persons who had custody of Linda. Ultimately, appellant found that Linda was in school at Petronila, a short distance from either Corpus Christi or Robstown, Texas. Appellant made some phone calls to school officials and then she, Grider and Toni went to the school where Linda was on the school bus. Toni rode on the school bus with Linda to the home of appellees, and appellant and Grider followed in their car. On arrival at the Noonan home appellant talked with Mr. Noonan and inquired as to the papers they had on Linda. Mr. Noonan gave her information as to the court case numbers, which appellant wrote down. On October 10, 1966 appellants filed the instant suit to set aside the two above-mentioned judgments and for custody of Linda.

In Hendricks v. Curry, 401 S.W.2d 796, 800, 801 (Tex.Sup.Ct. 1966), the Court held in part as follows:

"* * * A child is 'abandoned' within the intent and meaning of Article 2330 when it is 'deserted' by its parent or parents. * * *"

*       *       *       *       *       *

"* * * Article 46a, the adoption statute, requires parental consent to adoption except in certain circumstances. One of the circumstances in which consent is not required is where 'a living parent or parents shall voluntarily abandon and desert a child.' In that context 'abandonment' was defined in Strode v. Silver-

man, Tex.Civ.App., 209 S.W.2d 415, 419 (1948), writ refused, n. r. e., in this language:

'Voluntary abandonment, as used in the adoption statute, * * * is used more in a sense of a wilful act or course of conduct, and such as would imply a conscious disregard or indifference to such child in respect to the parental obligation that the parent owes to such child.'

"See also Lee v. Purvin, Tex.Civ.App., 285 S.W.2d 405, 408 (1956), writ refused, n. r. e. The definition is a sound one and should also be followed in determining whether a child is an 'abandoned' child within the meaning of Article 2330. * * *"

In *Hendricks,* the court held that the evidence was legally insufficient to support a finding of abandonment of the child by its unwed mother on facts substantially different from those presented here, and set aside prior orders declaring the child to be dependent and neglected and for its adoption. In reaching our decision we apply the rule stated in *Hendricks* to the facts of the instant case.

■ We hold that the evidence presented to the trial court authorized it to find (as it did in findings 1 and 2) that in July 1963, appellant left and deserted her child Linda with the intention of permanently abandoning said child, and that Linda remained abandoned by appellant until after the month of April 1964. Linda was only four years of age in July 1963 when appellant left her (and Toni, her half-sister) in Denver, Colorado, without making arrangements for her care and support. The evidence establishes that Mrs. Lane, mother of appellant, was not in position to care for and support appellant's children without assistance, and appellant had no right to assume that her mother would do so for any extended period of time. Appellant did not even attempt to contact her mother concerning the children for a period of about five months after she left them. When appel-

lant did return to Denver in December 1963, she did not visit her mother but attempted one telephone call to Mrs. Lane which was promptly terminated by the latter. At the same time appellant received information from the Denver Police Department and from her second husband that Mr. and Mrs. Carter of Corpus Christi, Texas, were in Denver trying to contact appellant about the adoption of Linda. Appellant made no effort to exercise parental care of Linda but instead returned to Grider in California. Again, in about April 1964, when appellant returned to Denver, she received information from her second husband that Linda was in Corpus Christi with the Carters, but she did not act on this information and continued to avoid parental responsibility. Appellant does not contend that she was financially unable to care for or support her child after her marriage to Grider. The evidence reflects that appellant did not advise Grider in regard to her children for some time after their marriage, or at least did not fully advise him concerning them. After April 1964, on several occasions, appellant received information, as above-mentioned, concerning the general whereabouts of her children, but she did not take meaningful action concerning their custody or support until December 1965 at which time she located Toni, her oldest daughter, in Beeville, Texas and ultimately arranged to regain her custody. Appellant then waited about nine additional months, until September 1966, before she took concrete steps to locate Linda. In short, for a period of more than three years, appellant allowed other persons to have the care, custody and control of Linda, without meaningful action on her part to assume parental responsibility. The record establishes that appellees, as well as the other persons who had custody of Linda before them, acted in utmost good faith in furnishing the care, support and education of Linda.

Our Supreme Court in the case of DeWitt v. Brooks, 143 Tex. 122, 182 S.W.2d 687 (1944), cert. den. 325 U.S. 862, 65 S.Ct. 1196, 89 L.Ed. 1983, on facts which in most material respects are similar to those here held

that a finding of abandonment by the trial court was sufficiently supported as against a "no evidence" contention. The Court held in part as follows:

"In determining whether or not Brooks and wife had so abandoned the child as to allow it to become a dependent and neglected child within the meaning of the statute, the trial court had the right to consider not only the facts that transpired prior to the adjudication of dependency, but also the facts that occurred subsequent thereto, as circumstances showing the intention of Mr. and Mrs. Brooks on the issue of prior abandonment."

Appellant's position seems to be that since she testified that she could not locate her children and was attempting so to do over a period of time, that a finding of abandonment is not supported by the evidence. However, the evidence, as hereinbefore partly summarized, was legally sufficient to support the finding of abandonment by the trial court against appellant's version of the facts.

■ Appellant contends that the sole purpose of the dependency and neglect proceeding was to facilitate the subsequent adoption proceedings and, therefore, both such proceedings are void for that reason alone. Appellant cites Hull v. Hull, 332 S. W.2d 758, (Tex.Civ.App., San Antonio, 1960, n. w. h.) and Pettit v. Engelking, 260 S.W.2d 613, (Tex.Civ.App., San Antonio, 1953, n. r. e.), in support of that proposition. Analysis of those cases reveals that neither involved facts comparable to those in the instant case. In both said cases, the adopting parents were shown to have acted fraudulently toward the natural parent in not giving them notice of the proceedings and the child was not shown to have been, in fact, dependent at the time it was so adjudged. Here there is no evidence that appellees acted fraudulently toward anyone but instead reflects that they were extending their love and care to a child who in fact had been deserted and abandoned by her mother. At the time of the dependency proceeding, neither appellees nor anyone else acquainted with the child or the appellant knew the whereabouts of appellant, and this situation was caused by appellant's own conduct.

■ Appellant apparently takes the position that although Linda had in fact been abandoned in July 1963, she was not abandoned in April 1964, because appellant was then trying to locate her. Appellant cites Hendricks v. Curry, 401 S.W.2d 796 (Tex. Sup.Ct., 1966); Strode v. Silverman, 209 S.W.2d 415 (Tex.Civ.App., Waco, 1948, writ ref., n. r. e.), and Lee v. Purvin, 285 S.W.2d 405 (Tex.Civ.App., Waco, 1955, wr. ref., n. r. e.) in support of that position. The proposition is sound that child must be, in fact, dependent and neglected at the time it is so adjudged and not at some distant time in the past. However, since the trial court here after a full hearing, found that Linda had been abandoned in July 1963, and that such abandonment continued until well after the dependent and neglect proceedings and since those findings find ample support in the evidence, appellant's contentions in that respect are now foreclosed. Appellant's points one, two and three are overruled.

■ Under appellant's fourth and fifth points she asserts that the trial court erred in concluding as a matter of law that the proceeding in cause No. 82186, Juvenile No. 3988, styled In Re: Linda Nell Colgan, a minor, in the Court of Domestic Relations for Nueces County, Texas, was regular and carried on in the manner required by law, and sufficient facts existed at the time of the entry of the order to authorize entry of the judgment of dependency, and such judgment is valid and of full force and effect; and that the court erred in sustaining appellees' exception to paragraph VII of appellant's pleadings. Appellant's position under these points is that the order of dependency terminating the parental rights of appellant is void because the petition to declare the minor dependent and neglected failed to allege that

the court should appoint a person to represent the minor child and, in fact, the court did not appoint a person to represent the child. The trial court sustained appellees' exception to the portion of appellant's pleadings setting up such allegations. However, appellees have answered appellant's contention on the assumption that the court did not appoint such a person to represent the child even though this fact does not appear of record. Appellant contends that under Article 2332, Vernon's Ann.Civ.St., as amended, the court entering the order of dependency was required to "appoint some suitable person to represent said child in said cause" and the court's failure so to do is jurisdictional and renders the order void. The sole basis for appellant's argument is the use of the word "shall" in the statute rather than the word "may." Appellees' position is that such requirement is not mandatory and jurisdictional but rather is directory only, and even if it be assumed that the trial court failed to appoint a representative for the child, it does not render the dependency order void nor affect the validity of the subsequent adoption. Additionally, appellees say that under the principles set out in DeWitt v. Brooks, 143 Tex. 122, 182 S.W.2d 687, (1944), cert. denied, 325 U.S. 862, 65 S.Ct. 1196, 89 L.Ed. 1983, it is immaterial whether the dependency decree was entered in accordance with the procedural requirements of the dependency statute since appellees in the instant proceeding were required to and did prove independently and by evidence extrinsic to the dependency order the grounds for termination of the parental rights of appellant. We agree with appellees' said contention. While it is true that trial courts should in dependency and neglect proceedings comply with the provisions of Art. 2332, V.A.C.S., where neither of the parents or a guardian is found by appointing some suitable person to represent the child, we believe that failure to do so does not render the dependency order fatally defective. Where, as in this case, the mother did not have notice of the origi-nal dependency proceeding and later brings an action to set aside the judgment therein and is afforded a full hearing with the burden of proof placed upon the parties seeking to uphold said decree, the failure of the court to appoint a representative for the child on the original hearing, becomes immaterial. On the trial of the instant proceeding, instituted by appellant, due process of law was afforded to appellant, appellees and the minor child involved. The conclusion of the trial court, arrived at after such second and complete hearing that sufficient facts existed at the time of entry of the original order to authorize entry of the judgment of dependency, was correct and proper under the record before us and the same should be upheld. DeWitt v. Brooks, supra. Appellant's points four and five are overruled.

Appellant, by her sixth and seventh points, asserts that the court erred in finding that it is for the best interest and welfare of the minor child, Linda Nell Colgan, now Linda Kay Noonan, that her care, custody, and control remain in and be awarded to the appellees, James Kennington Noonan and wife, Thena Carson Noonan, and in finding that appellees are fit and proper persons to have the custody, care, and control of said minor child. Such points again involve "no evidence" contentions. The argument made by appellant under these points is in substance that since she is admittedly the natural parent of the child, and since the trial court found that she and Mr. Grider were also suitable persons to have the custody of the child, she was entitled to its custody. The same contention was made in DeWitt v. Brooks, supra. There, after concluding that the trial court's finding of abandonment in the hearing on a Bill of Review was supported by the evidence as against a contention of "no evidence," the Texas Supreme Court stated:

"The plaintiffs contend that since they were admittedly the natural parents of the child, and since the trial court found they were suitable persons to have the

custody of the child, they were, as a matter of law, entitled to its custody. The holding of this Court in the case of State ex rel. Wood v. Deaton, 93 Tex. 243, 54 S.W. 901, seems to justify that contention. However, since the rendition of that decision in 1900 the Legislature has by positive enactment, we think, changed the public policy of this State in this respect. Article 2337 provides that in a case where a child has been adjudged to be dependent and neglected, the parents shall thereafter have no right over, or to the custody of, the child, except upon such conditions as may be ordered by the court. Article 2335 provides that when such a child has been turned over to a person or institution in a dependency proceeding, such person or institution shall have the right to the custody thereof. Article 46a, Vernon's Ann.Civ.St., Acts 1931, 42nd Leg., p. 300, c. 177, provides for judgment authorizing the adoption of children. Section 6 thereof provides in part as follows: 'Consent shall not be required of parents whose parental rights have been terminated by order of the Juvenile Court or other Court of Competent Jurisdiction; provided, however, that in such cases adoption shall be permitted only on consent of the Superintendent of the Home or School, or of the individual to whom the care, custody or guardianship of such child has been transferred by a Juvenile Court or other Court of Competent Jurisdiction.'

"Section 9 of said Act provides 'When a child is adopted in accordance with the provisions of this Article, all legal relationship and all rights and duties between such child and its natural parents shall cease * * *. Said child shall thereafter be deemed and held to be, for every purpose, the child of its parent or parents by adoption as fully as though born of them in lawful wedlock. * * * Said parent or parents by adoption shall be entitled to the * * * custody and company of said adoption child. . * * *'

"Section 7 of the same Act provides as follows: 'Nothing in this Act shall prevent a Court of Competent Jurisdiction from taking away from such adoptive parent the custody of the adopted child and awarding the same to its natural parents, or either of them or to any other person, upon proof of the bad moral character of such adoptive parent, or upon proof of abuse, neglect or ill treatment of such adopted child by the adoptive parent.'

"The child here involved was adopted in the manner above provided for.

"Under the above statutes, we think it is clear that it was the intention of the Legislature of this State that when the natural parents of a child abandon or so neglect the child as to cause it to become a dependent or neglected child within the meaning of the statute, the natural parents thereby forfeit their superior right to the custody of the child, and when a judgment is entered adjudging the child to be a dependent child, and the child is adopted by some other person in the manner provided by law, the adopting parents acquire the superior right to the custody of the child and are entitled to retain the custody thereof so long as the evidence shows that they are suitable persons to have such custody.

"The record in this case shows an adjudication of dependency due to the neglect of the parents, and the entry of an order by the trial court terminating the right of the natural parents to the custody of the child. The record further discloses the entry of an order authorizing the adoption of the child by the DeWitts and the transfer of the custody of the child to them. The evidence further shows, and the trial court found, that the DeWitts are suitable persons to have the custody of the child. Under these circumstances the natural parents are not entitled to the custody of the child as against the adopting parents."

In the instant case, just as was the situation in DeWitt v. Brooks, supra, a judgment of dependency had been previously rendered and the evidence presented at the hearing on appellant's motion for bill of review supported existence of facts which authorized entry of the order. The trial court here found that appellees were fit and proper persons to have the care, custody and control of Linda and that finding is supported by the evidence. The record discloses that the principal of the school, to which the child has been sent by appellees snce the adoption, testified that he was personally acquainted with the child and had observed her in school on many occasions; she was a well adjusted, well dressed, well fed, well regarded and cooperative student. In addition, two disinterested witnesses, who reside in the area where appellees live, testified that they were well acquainted with appellees and the child, that appellees regularly attended the same church as the witnesses, that appellees are religious and reputable people in the community and have made an exceptionally good home for the child. The trial court heard the testimony of the child herself in chambers, in the presence of all counsel, which action was solicited by counsel for appellant at the insistence of appellant. That testimony reflected that the child now considers Mr. and Mrs. Noonan to be her "Mommy" and "Daddy", that she is deeply devoted to them, living happily under their care, and has no desire to leave them and return to her former environment. The court's observation of the child and her testimony were properly considered in connection with the finding of custody. In Herrera v. Herrera, 409 S.W.2d 395 (Tex.Sup.Ct.1966) the Court held in part as follows:

"The trial court's judgment in determining the best interests of the child and in awarding its custody in accordance with this determination 'should be reversed only when it appears from the record as a whole that he has abused the discretion entrusted to him.' Mumma v. Aguirre, [Tex.Sup., 364 S.W.2d 220]

supra; DeWitt v. Brooks, 143 Tex. 122, 182 S.W.2d 687, 694–695 (1944); Taylor v. Meek, 154 Tex. 305, 276 S.W.2d 787, 791 (1955)."

Appellant attacks the trial court's finding that appellees are fit and proper persons to have the custody of Linda by reference to two facts appearing in the record. One is that Mr. Noonan had experienced financial problems and the other was that appellees are persons of modest means. The evidence tends to show that appellees are persons of comparatively modest means, but this does not prohibit the Court from properly concluding that appellees were fit and proper persons to have custody of the child. There is no showing that such factor has operated to the detriment of Linda. The evidence also shows that appellant and her present husband are also persons of modest means. Appellant, cites Binion v. Mathis, 171 S.W.2d 512 (Tex.Civ.App., Amarillo, 1943, n. w. h.); Legate v. Legate, 87 Tex. 248, 28 S.W. 281, (1894); State ex rel. Wood v. Deaton, 93 Tex. 243, 54 S.W. 901, (1900); Bemus v. Bemus, 63 Tex.Civ.App. 148, 133 S.W. 503, (San Antonio, 1910, wr. ref.); Watts v. Lively, 60 S.W. 676, (Tex.Civ.App., Galveston, 1901, n. w. h.); and Blue v. Holman, 245 S.W. 722, (Tex.Civ.App., Texarkana, 1922, n. w. h.), for the principle that natural parents have the superior right to custody of their children. Each of those cases involved disputes over the custody of a child between natural parents and third persons. In none of them had the parental rights of the natural parents been terminated by an order of dependency under the Dependent and Neglect Statutes or by a showing of conduct which would authorize termination of such rights. As pointed out in the DeWitt case, supra, those cases have no application to a situation such as is presented here where appellant's parental rights have been terminated by a prior order of dependency and the showing of abandonment made in the trial court on a subsequent hearing. Appellant's points six and seven are overruled.

Appellant by her eighth and ninth points asserts that the court erred in refusing her request for an additional finding of fact that she had no notice, actual or constructive, of the proceeding to declare Linda a dependent and neglected child in Cause No. 82186, Juvenile No. 3988, Domestic Relations Court of Nueces County, Texas, and in refusing her request for an additional finding of fact that she had no notice, actual or constructive, of the proceeding to adopt Linda Nell Colgan, now Linda Kay Noonan, in Cause No. 84776, Juvenile No. 4167, Domestic Relations Court of Nueces County, Texas. Under these points appellant contends that the dependency proceeding and the subsequent adoption proceeding are void because appellant had no notice of the proceedings and was, therefore, deprived of due process. As support for such contention, appellant relies upon Armstrong v. Manzo, 380 U.S. 545, 85 S.Ct. 1187, 14 L.Ed.2d 62 (1965). There, in proceedings instituted in the district court of El Paso County by a divorced mother and her new husband for the adoption of a child from the mother's prior marriage, no notice of the pendency of the proceedings was given to the divorced father of the child, although the parties initiating the adoption proceedings well knew his precise whereabouts in Texas and could have easily served him with citation in the proceedings. After the adoption decree was entered, the father was notified of the adoption and promptly filed a motion to set aside the decree and for a new trial. The district court, without setting aside the adoption decree, granted a hearing on the motion, which was denied. The Texas Court of Civil Appeals affirmed (371 S.W.2d 407) and the Supreme Court of Texas refused application for writ of error, N. R. E. The Supreme Court of the United States construed the action of the Court of Civil Appeals in affirming the judgment of the trial court as holding that the burden of proof to show no forfeiture of parental rights rested upon the natural father. The Supreme Court reversed and held that (1) the failure to notify the divorced father of the pending adoption proceedings deprived him of due process of law and rendered the decree constitutionally invalid, and (2) the subsequent hearing did not cure its constitutional invalidity because the burden of proof was placed on the divorced father. The Court held in part as follows:

" * * * As the record shows, there was placed upon the petitioner the burden of affirmatively showing that he had contributed to the support of his daughter to the limit of his financial ability over the period involved. * * * For 'it is plain that where the burden of proof lies may be decisive of the outcome.' * * * "

Article 2330, V.A.C.S., as amended, provides, in effect, that any child under sixteen years of age who is dependent upon the public for support, or who is destitute or homeless or abandoned, is a dependent or neglected child. Article 2331 provides for the institution of proceedings to have a child adjudged to be a dependent or neglected child. Article 2332 provides that if the parents or guardian of the child are not within the county where the proceedings are instituted, it shall not be necessary to serve them with citation. Article 2335 provides that if the court adjudges the child to be a dependent or neglected child, an order may be made turning the child over to the care and custody of any suitable person who is able and willing to care for same; and, when such child is so turned over to such person, they shall have the right to the custody of said child, and shall be at all times responsible for its education and maintenance, subject at all times to the order of the court. Article 2336 authorizes the court to change the custody of the child when necessary, and Article 2337 provides that when a child is adjudged to be dependent or neglected, then the natural parent thereafter has no right over or to the custody of the child except upon such conditions as the court may impose, or, where, upon proper proceedings, such child may lawfully be restored to the parents or guardian. Article 46a, V.A.C.S., sets out the various requirements and procedure for

adoption and provides in Section 6, that consent of the natural parents of a child shall not be required to the child's adoption when their parental rights have been terminated by the entry of a dependent and neglect decree under the statutes cited above and that in those cases adoption is allowed upon the "written order of the court terminating such parental rights."

Under the decisions of the courts of Texas, orders of dependency and neglect and decrees of adoption entered in substantial compliance with the applicable statutes are valid and binding. DeWitt v. Brooks, 143 Tex. 122, 182 S.W.2d 687 (1944), cert. denied 325 U.S. 862, 65 S.Ct. 1196, 89 L.Ed. 1983. The statutes authorizing summary proceedings without notice to the natural parent are constitutional, and a decree entered in accordance therewith is valid, subject only to the rights of the parent or guardian who was without notice thereof to a full hearing in a subsequent proceeding on the issue as to whether the child was, in fact, a dependent and neglected child. Our Texas Supreme Court in DeWitt v. Brooks, supra, held in part as follows:

"  *   *   *  where the parents are without notice of the proceedings, they must be allowed a full hearing in a subsequent proceeding on the issue of whether sufficient facts existed as to authorize the entry of the judgment of dependency.  *  *

"If upon such subsequent hearing it appears that the parents had abandoned the child, or otherwise neglected it to such an extent that it had, in fact, become a dependent or neglected child within the meaning of the statute, then the proceedings are valid even as against the parents, although they had no notice of the proceedings.  *  *  *

"Parents may voluntarily relinquish their right to the custody of their child either by agreement or by abandonment or by such other neglect or mistreatment as will authorize the intervention of the State for the best protection of the child, and when they do so, the State has the lawful right to award custody of such child to others. While a parent who has no notice of the proceedings in which a child was adjudged to be a dependent child is not cut off from his right to show in a subsequent hearing that he had not allowed his child to become a dependent child, yet, if upon such subsequent hearing it appears that he had, in fact, allowed his child to become a dependent child, then the judgment declaring the child to be a dependent child and awarding its custody to some one else becomes binding upon him."

The Texas Supreme Court has had an opportunity since the decision of the United States Supreme Court in *Armstrong* to again speak on the subject in light of that opinion. In Gunn v. Cavanaugh, 391 S.W. 2d 723 (Tex.Sup.Ct.1965) the court reiterated the principles announced in DeWitt v. Brooks, supra, and pointed out the effect *Armstrong* had on those principles. The Court said:

"The procedure to be followed in a case such as this is clearly outlined in the case of DeWitt v. Brooks, 143 Tex. 122, 182 S.W.2d 687 (1944).  *   *   * "

The Court pointed out that *DeWitt* required the trial court to impose upon the party seeking to terminate the parental rights of the natural parent the burden of proving the fact of neglect, abandonment or other anti-social conduct by evidence extrinsic to the former dependency decree. The Court noted the opinion of the U. S. Supreme Court in *Armstrong* and stated that this was what was required by that decision in order to comply with due process. The trial court here imposed the burden of proving the factual grounds for termination of appellant's parental rights on appellees and a separate order so placing the burden of proof was entered by the trial court prior to the hearing. In compliance with this order, appellees were required to and did produce the evidence re-

quired to terminate appellant's parental rights. The trial court found that appellant had, in fact, abandoned her child prior to the entry of the dependency order and that such abandonment continued until and after the entry of that order. Under these circumstances, appellant was given a full, fair and complete hearing in accordance with the decisions of the Texas Supreme Court and the United States Supreme Court. Appellant's contention under her points eight and nine are without merit. The record affirmatively establishes that her rights to due process of law were fully afforded to her on the hearing below from which this appeal is taken.

Appellant, by her points 10, 11 and 12 asserts that the trial court erred in refusing appellant's request for a conclusion of law that the evidence adduced established as a matter of law that the parental rights of the appellants, particularly the natural mother, Imogene Colgan Grider, were terminated in Cause No. 82186, Juvenile No. 3988, by the 117th Judicial District Court, Nueces County, Texas; and in refusing appellant's request for a conclusion of law that the evidence adduced established as a matter of law that the adoption of Linda Nell Colgan, now Linda Kay Noonan, was granted and permitted without first obtaining the written order of the 117th Judicial District Court of Nueces County, Texas, consenting to the adoption; and that the court erred in its conclusion of law that the proceedings in Cause No. 84776, Juvenile No. 4167, styled In re: Adoption of Linda Nell Colgan, a Minor, in the Court of Domestic Relations for Nueces County, Texas, were regular and were carried on in the manner required by law, and the decree of adoption entered therein is valid and of full force and effect. Appellant's position under these points is that the adoption decree was void because it was not entered upon the written consent of the Court which had theretofore terminated the parental rights of appellant. Appellant argues that because the order of dependency was signed by Judge Horace Young, the regular District Judge of the 117th Judicial District Court of Nueces County and the judgment of adoption was signed by Judge George Hamilton, the regular Judge of the Court of Domestic Relations of Nueces County, that the consent of the 117th District Court to the adoption was required by Sec. 6, Art. 46a, V.A.C.S. The statute provides in part that "Consent shall not be required of parents whose parental rights have been terminated by order of the Juvenile Court or other court of competent jurisdiction; provided, however, that in such cases adoption shall be permitted only upon the written order of the court terminating such parental rights. * * *" In the case at bar, the decree of adoption signed by Judge George Hamilton, Judge of the Court of Domestic Relations, granting adoption of the child, reflects that the adoption was granted upon the written order of the Court of Domestic Relations of Nueces County, Texas. Appellant's present contention has no merit because under Article 2338–10, V.A.C.S., all District Courts of Nueces County, and the Court of Domestic Relations of Nueces County have concurrent jurisdiction in cases involving dependency proceedings, adoptions, and all matters arising under the Juvenile and Child Welfare Laws. Section 4, of Art. 2338–10, V.A.C.S., provides in part as follows:

"Sec. 4. Immediately after this Act takes effect all cases enumerated or included above now pending in the District Courts of Nueces County, with the exception of the cases involving delinquent children and children charged to be dependent and neglected, shall be transferred to the Court of Domestic Relations created by this Act. The cases involving delinquent children and children charged to be dependent and neglected shall be tried by the Court designated as the Juvenile Court of Nueces County, Texas. Thereafter the Judges of the District Courts of Nueces County may transfer any case within the jurisdiction of the Court of Domestic Relations created by this Act to said Court of Do-

mestic Relations, and the Judge of the Court of Domestic Relations may transfer any case pending in said Court to any District Court of Nueces County, the particular District Court to which the transfer is to be made to be designated by the Presiding Judge of the District Courts of Nueces County. *Said Court of Domestic Relations may also sit for any of the District Courts of Nueces County and hear and decide for such Courts any case coming within the jurisdiction of the Court of Domestic Relations created by this Act. All District Courts of Nueces County may likewise sit for, hear and decide cases pending in the Court of Domestic Relations, as, the sitting for, hearing and deciding cases is now or hereafter may be authorized by law for all District Courts of Nueces County."* (Emphasis supplied).

Consequently, it appears that in the original dependency proceedings, Judge Young, although the regular Judge of the 117th District Court of Nueces County, was acting in the Court of Domestic Relations of Nueces County. Article 46a, V.A.C.S. requires consent to the adoption by the written order of the court which terminated the parental rights as distinguished from that of the judge who was presiding in the court when parental rights were terminated. The adoption decree in this case was rendered by the Court of Domestic Relations of Nueces County, with Judge Hamilton presiding, and it recites the required consent to adoption by that court. In the present proceeding, appellant's motion for bill of review was filed and tried in the Court of Domestic Relations of Nueces County, with Judge Young, presiding. Appellant was given a new and independent hearing on the question of whether sufficient facts existed at the time the decree of April 2, 1964 was rendered terminating the parental rights of appellant. Judge Young found that such facts did exist and confirmed the adoption decree entered by Judge Hamilton. We therefore hold that the requirements of the Art. 46a, Sec. 6, V.A.S.C., as to consent for adoption have been satisfied

and appellant's contention is without merit. Appellant's points 10, 11 and 12 are overruled.

The judgment of the trial court is affirmed.