Jeannine Chapman SHRINER et vir, Appellants,

v.

Margaret SIMMONS, Representative, Texas State Department of Public Welfare et al., Appellees.

No. 15073.

Court of Civil Appeals of Texas, San Antonio.

June 28, 1972.

Rehearing Denied July 26, 1972.

William M. Porter, Walter J. Madalinski, San Antonio, Lawrence Harrison, Junction, for appellants.

Crawford C. Martin, Atty. Gen., of Texas, Nola White, First Asst. Atty. Gen., Alfred Walker, Samuel D. McDaniel, J. C. Davis, Bill Campbell, Asst. Attys. Gen., Robert R. Barton, Dist. Atty., Kerrville, for appellees.

BARROW, Chief Justice.

This is an appeal from a judgment denying an application for writ of habeas corpus brought by Jeannine Chapman Shriner on November 5, 1970, subsequently joined by her husband, Glen Shriner, seeking to set aside a prior judgment of May 6, 1970, whereby two minor children who had been adopted by Jeannine Chapman and her deceased husband, Roy Chapman, were declared to be dependent, the parental rights of Jeannine Chapman were terminated, and the care and custody of said children were awarded to appellee, Margaret Simmons, as a representative of Child Welfare Unit 23 of the Texas Department of Public Welfare subject to the further orders of the court. Appellants also urged that there had been a change of conditions and sought custody of the two children. The Presbyterian Children's Home and Service Agency was made a party defendant to the application for writ of habeas corpus, apparently under appellants' belief that said home had the actual custody of said children. However, the record does not show that the home participated in any way in this controversy.

Appellants urge seven assignments of error. They complain of the judgment of May 6, 1970, because the "waiver" of Jeannine Chapman was executed prior to the filing of the petition; evidence was heard before the petition was filed; and because no facts are alleged to support a finding of dependency. It is further asserted that the evidence does not support such judgment. Complaint is urged to the judgment of November 3, 1971, because of the denial of a trial by jury. It is also urged that the trial judge erred in failing to disqualify himself from said hearing. Finally, it is urged that the trial court erred in refusing to return the care and custody of the minor children to appellants.

On May 5, 1970, a petition was filed in the District Court of Kimble County on behalf of the County Attorney wherein it was averred that the two girls, aged 9 and 10, were dependent or neglected children in that they had no proper parental care or guardianship. Attached to said petition was a waiver signed by Jeannine Chapman wherein she declared that she was the adoptive mother of said girls; the adoptive father was deceased; and she waived service of citation and requested that said children be declared dependent children without further notice to her. This instrument was signed and sworn to by her on May 1, 1970. The judgment recites that in such hearing Jeannine Chapman was represented by her attorney, Larry Harrison, Esq., and the children were represented by M. C. Blackburn, Jr., Esq., as guardian ad litem.

■ Article 2332, Vernon's Annotated Civil Statutes, requires citation to be issued to the parents or parent of the children, if residents of the county, provided however, that citation shall not be issued if the parent ". . . shall indorse on said petition a request that the child be declared a 'dependent child,' . . . ." Since the petition filed herein included an endorsement wherein Jeannine Chapman requested that said children be declared "dependent children," it was not necessary that she be cited. The record before us conclusively demonstrates that Jeannine Chapman had proper notice of the dependency proceeding.

■ Under Article 2330, V.A.C.S., the term "dependent child" includes any child under 18 years of age who has not proper parental care or guardianship. The sworn petition filed herein by the County Attorney alleged this ground of dependency. Such allegation supports a finding that the two children were, in fact, dependent.

■ Appellants also attack the May 6th judgment because it recites ". . . that upon this 4th day of May, 1970, in the above entitled and numbered cause, came on to be heard the petition filed herein . . .", whereas the clerk's file mark on the petition is May 5, 1970. There is no explanation in the record and, therefore, we are unable to determine whether this is a judicial error or clerical mistake. See Finlay v. Jones, 435 S.W.2d 136 (Tex. 1969). Undoubtedly, the reason for the lack of explanation is that such error or mistake was not raised by appellants in their pleading or in any other manner in the trial court.[1] This variance is immaterial in this collateral attack on the May 6th judgment since it does not render the judgment void.

■ Appellants' final complaint regarding the May 6th judgment is directed towards the sufficiency of the evidence. Since Jeannine Chapman was given sufficient notice of the hearing and no appeal was perfected from such judgment, appellants were not entitled to a full hearing on the issue of dependency and may not now attack the sufficiency of the evidence introducted at such hearing. Cf. De Witt v. Brooks, 143 Tex. 122, 182 S.W.2d 687 (1944); Aechternacht v. Page, 429 S.W.2d 597 (Tex.Civ.App.—Texarkana 1968, no writ); Harrell v. Harrell, 428 S.W.2d 370 [Tex.Civ.App.—Houston (14th Dist.) 1968, writ ref'd n. r. e.]. The trial court did not err in refusing to set aside the judgment of May 6, 1970.

Nevertheless, appellants had the right to file a subsequent petition in the nature of a writ of habeas corpus and to urge therein that a material change in conditions had occurred whereby it was in the best interests of said children that custody and control be granted appellants. See Articles 2336–2337, V.A.C.S.; Hendricks v. Curry, 401 S.W.2d 796 (Tex.1966); Burson v. Montgomery, 386 S.W.2d 817 (Tex.Civ. App.—Houston 1965, no writ). Such hearing should be distinguished, however, from one based on a motion to reopen the case which is filed within 30 days. Cf. Pettit v. Engelking, 260 S.W.2d 613 (Tex.Civ.App. —San Antonio 1953, writ ref'd n. r. e.).

■ Appellants urge that the trial judge erred in the 1971 hearing by refusing to grant a jury trial and in not disqualifying himself. We assume, without deciding, that a jury trial is authorized in this type of custody proceeding but error is not shown herein because the jury was not timely demanded. This case was specially set for October 19, 1971, by fiat signed on September 3, 1971. The demand for jury was filed on October 12, 1971. This was less than the ten days notice required by Rule 216, Texas Rules of Civil Procedure. The right to a jury trial in civil cases in Texas is not an absolute right but is subject to this procedural rule regarding time of demand. Gallagher v. Joyce, 459 S.W.2d 221 (Tex.Civ.App.— Corpus Christi 1970, writ ref'd n. r. e.); Collins v. Miller, 443 S.W.2d 298 (Tex. Civ.App.—Austin 1969, writ ref'd n. r. e.). Although mandatory language is used in Rule 216, supra, as to the necessity of making the demand for jury and paying the jury fee not less than ten days before the date set for trial, this provision has been construed to be directory only. Gallagher v. Joyce, supra; Jerrell v. Jerrell, 409 S.W.2d 885 (Tex.Civ.App.—San Antonio 1966, no writ). Accordingly, the granting of a trial by jury where the demand is filed less than ten days before the trial date is within the sound discretion of the trial judge.

■ The Second 38th Judicial District Court is a multi-county district composed

---

1. In the application for habeas corpus filed November 5, 1970, and as amended on October 8, 1971, appellants did not allege any defects in the May 6, 1970, judgment, but alleged only that Jeannine Chapman withdrew and repudiated any written agreement signed by her that the children could be adjudged dependent and neglected or that they could be adopted.

of five counties. The record establishes that no jury panel was available in Kimble County the week that this case was set and the granting of a jury trial would have delayed the trial and interfered with the orderly handling of the court's docket. In this situation, the court did not abuse its discretion in refusing to grant appellants' late request for a jury trial.

Appellants filed a motion on the day of the hearing wherein the trial judge was respectfully requested to disqualify himself from sitting in the matter because he had a fixed opinion that the case should not be reopened. This was denied by the trial judge in open court although he had told the attorney for appellants that Mrs. Simmons had advised him the children had been placed in a foster home and were doing well. In this situation, he told appellants' attorney that the court was reluctant to set a hearing unless it was absolutely necessary. The trial judge stated that his only consideration in the matter was the best interest and welfare of the children, and there is nothing in the record to demonstrate the contrary.

This Court in Lombardino v. Firemen's & Policemen's Civil Service Commission, 310 S.W.2d 651, 654 (1958, writ ref'd n. r. e.), stated the applicable rule as follows:

"The law is well settled that neither the constitution nor the statutes make the expression or holding of an opinion a ground for disqualifying a judge. On the contrary, it is settled by many decisions that a judge is not incompetent to try a case because of opinions formed, held or expressed by him, concerning the issues involved, nor because he has personal knowledge of the facts of the case. It is presumed that a judge can and will divest himself of any previous conceptions, and that he will base his judgment, not on what he originally supposed but rather upon the facts as they are developed at the trial."

See also: Article V, Section 11, Texas Constitution, Vernon's Ann.St.; Article 15,

V.A.C.S.; Quarles v. Smith, 379 S.W.2d 91 (Tex.Civ.App.—Houston 1964, writ ref'd n. r. e.). Error is not shown by the trial judge's refusal to disqualify himself in this cause.

The final point urges that the trial court erred in not returning the children to appellants. There is no doubt that Jeannine Chapman showed a material change of condition from that of May 6, 1970. The meager evidence as developed by her shows that in May 1970, she was literally at the bottom of her luck and this affected her ability to provide proper parental care to the children. She was on probation for an eight-year sentence given her in 1963 for shooting to death Mr. Chapman. Before May, 1970, she was en route to her parents' home in Wyoming after living about a month or so in Louisiana and Mississippi when her car needed repairs. She was stranded in Junction for several months while the car was being repaired. In the meantime, she took work as a waitress in a tavern and placed the children in school. She was admittedly unable to give them proper supervision, and a man moved onto the premises to help her.

The entire situation was unsatisfactory and resulted in the young girls running away on two occasions. Mrs. Jeannine Chapman Shriner admitted that she beat them repeatedly with a western belt after the second occasion. The extent of this beating was not fully shown at the habeas corpus hearing although the girls were in a sad condition at the time Jeannine Chapman was arrested and placed in jail for child beating. Mrs. Jeannine Chapman Shriner further testified that the girls had received most of the bruises and abrasions as a result of the run-away, but the court saw photographs and had the right to believe that the children's condition was caused by the beating at the hands of Jeannine Chapman. She voluntarily signed the "waiver" after consultation and in the presence of her attorney and then left for Wyoming with the man who had been living on the premises.

By November, 1971, things were definitely looking up for her. She married Glen Shriner on February 3, 1971, and since June 1, 1971, she and her husband have operated a hotel in Worland, Wyoming, where her husband is also employed by an oil company. The couple both testified that they had suitable living quarters in the hotel to make a good home for the girls and wanted to do so. She testified that she never had any intention of permanently giving up the children, but thought the dependency would only be a temporary arrangement to enable the children to live at a church school until she got settled. Also, she signed the waiver to avoid the possibility of violating the terms of her probation.

In De Witt v. Brooks, supra, the Supreme Court considered the effect of an adjudication of "dependent child" upon the natural parents' subsequent right to custody. The Court held:

"Under the above statutes, we think it is clear that it was the intention of the Legislature of this State that when the natural parents of a child abandon or so neglect the child as to cause it to become a dependent or neglected child within the meaning of the statute, the natural parents thereby forfeit their superior right to the custody of the child, and when a judgment is entered adjudging the child to be a dependent child, and the child is adopted by some other person in the manner provided by law, the adopting parents acquire the superior right to the custody of the child and are entitled to retain the custody thereof so long as the evidence shows that they are suitable persons to have such custody." 182 S. W.2d at 694.

See also: Herrera v. Herrera, 409 S.W.2d 395 (Tex.1966); Grider v. Noonan, 438 S. W.2d 631 (Tex.Civ.App.—Corpus Christi 1969, no writ).

■ The judgment of May 6, 1970, terminated the superior right of Jeannine Chapman as the adoptive mother of the two girls to their custody and control. Nevertheless, under Articles 2336–2337, supra, she had the right to show in the subsequent proceeding that the best interest of the children would be served by restoring the custody and control to her and Mr. Shriner. This was a decision largely in the sound discretion of the trial court in that the rule is now established that the trial court's judgment in determining the best interests of the child and in awarding its custody in accordance with this determination should be reversed only when it appears from the record as a whole that it has abused the discretion entrusted to it. Herrera v. Herrera, supra; Mumma v. Aguirre, 364 S.W.2d 220 (Tex.1963).

■ Few decisions are more uncertain than that of weighing the conflicting claims as to the best interests and welfare of minor children. Appellants made no complaint that the children are not being properly cared for and, therefore, the present custodians were not brought into court. See Luthern Social Service, Inc. v. Meyers, 460 S.W.2d 887 (Tex.1970). However, the two girls, after a very unsettled early life, appear to have become settled and adjusted in a good foster home. The emotional effect of another change could be harmful. Nevertheless, the claim of appellants is very strong in that Jeannine Chapman had taken these children as her own and cared for them for about six or seven years before May 1, 1970. Glen Shriner had never seen the children, but expressed a willingness to provide for them as a father. The trial judge knew the condition of the girls in May of 1970, and in November, 1971. We cannot say that he abused his discretion in refusing to return the girls to the custody and control of appellants.

The judgment of the trial court is affirmed.